**John LEADBEATER, Appellant,**

v.

**PORT AUTHORITY TRANS–HUDSON CORPORATION.**

**Leonardo BENITEZ**

v.

**PORT AUTHORITY TRANS–HUDSON CORPORATION.**

**Appeal of Leonardo BENITEZ.**

**Nos. 88–5372, 88–5375.**

United States Court of Appeals, Third Circuit.

Argued Nov. 29, 1988.

Decided April 24, 1989.

Rehearing and Rehearing In Banc Denied May 30, 1989.

Marvin I. Barish (Argued), William Keff Doak, Marvin I. Barish Law Offices, Philadelphia, Pa., for appellants.

Donald F. Burke (Argued), Hugh H. Welsh, Jersey City, N.J., for appellees.

Before SEITZ, STAPLETON and COWEN, Circuit Judges.

OPINION OF THE COURT

SEITZ, Circuit Judge.

I.

Plaintiffs John Leadbeater and Leonardo Benitez brought these actions against defendant Port Authority Trans–Hudson Corporation (P.A.T.H.), a commuter railroad, under the Federal Employers' Liability Act (F.E.L.A.), 45 U.S.C. §§ 51–58 (1982). The district court dismissed both cases, holding them barred by the eleventh amendment to the United States Constitution. We have jurisdiction of this consolidated appeal under 28 U.S.C. § 1291 (1982).

II.

Leadbeater and Benitez were P.A.T.H. employees who sustained injuries while on duty at that commuter railroad. Under the F.E.L.A., "[e]very common carrier by rail-

road while engaging in commerce between any of the several States" is liable to its employees for injuries suffered on the job. 45 U.S.C. § 51. F.E.L.A. further provides for jurisdiction in the district courts concurrent with state court jurisdiction, *id.* § 56.

P.A.T.H. is a wholly owned subsidiary of the Port Authority of New York and New Jersey (Port Authority). The Port Authority was created in 1921 by an interstate compact between New York and New Jersey. This interstate compact was approved by Congress in a Joint Resolution pursuant to the compact clause of the United States Constitution.[1]

This appeal presents the discrete question whether plaintiffs' suits in federal court against P.A.T.H. are barred by the eleventh amendment. In *Port Authority Police Benevolent Association v. Port Authority*, 819 F.2d 413 (3d Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987), we concluded that the Port Authority is an arm of the compacting states entitled to eleventh amendment immunity. The legislatures of New York and New Jersey have explicitly stated that P.A.T.H. "shall have all of the privileges [and] immunities ... of the Port Authority," N.J. Stat.Ann. § 32:1–35.61 (West 1963); N.Y. Unconsol.Laws § 6612 (McKinney 1979). P.A.T.H. contends that as a matter of federal law it has eleventh amendment immunity to the same extent as the Port Authority. Plaintiffs do not contend otherwise, and therefore we proceed on that premise.

### III.

Eleventh amendment immunity can be avoided by congressional abrogation, or by state consent to suit in federal court. *See Welch v. Texas Dep't of Highways and Public Transportation*, 483 U.S. 468, 107 S.Ct. 2941, 2945–46, 97 L.Ed.2d 389 (1987) (plurality opinion). Plaintiffs argue that P.A.T.H. has waived its eleventh amendment protection by its agreement to accept benefits under the Urban Mass Transportation Act, 49 U.S.C.App. § 1601, *et seq.*

They also argue that the state statutes consenting to suit against the Port Authority are an express waiver of P.A.T.H.'s eleventh amendment immunity. They finally argue that P.A.T.H.'s eleventh amendment immunity has been removed by congressional approval of an interstate agreement between New York and New Jersey. *See Petty v. Tennessee–Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed. 2d 804 (1959).

### A.

■ Plaintiffs first argue that P.A.T.H. has waived its eleventh amendment immunity to suit in federal court as a condition of its participation in a federal program under the Urban Mass Transportation Act (U.M.T.A.), 49 U.S.C.App. § 1601, *et seq.* Plaintiffs inform us that, as permitted by the U.M.T.A., 49 U.S.C.App. § 1608(f)(1), P.A.T.H. has petitioned for and received exemption from Interstate Commerce Commission regulation—including rate regulation—otherwise provided for by the Interstate Commerce Act. P.A.T.H. does not dispute this. We are required to decide the significance of P.A.T.H.'s participation in this program.

The U.M.T.A. provides that an agency such as P.A.T.H. "granted such an exemption ... shall be subject to all applicable federal laws related to (A) safety ..." 49 U.S.C.App. § 1608(f)(2). Plaintiffs argue that in accepting the benefit of the regulatory exemption under the U.M.T.A., P.A.T. H. has consented to suit in federal court. They point out that many of the safety statutes made applicable to P.A.T.H. provide for jurisdiction in the district court. They contend that these include among their number the F.E.L.A. *See* 45 U.S.C. § 56.

Plaintiffs' argument is a difficult one to maintain. Before such implicit waiver will be found we must conclude that the language of the federal statute, the U.M.T.A., "manifest[s] a clear intent to condition par-

---

**1.** "No State shall, without the Consent of Congress ... enter into any Agreement or Compact with another State ..." U.S. Const. Art I, § 10.

ticipation ... on a state's consent to waive its constitutional immunity." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 247, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985) (spending clause enactment). We do not believe that the U.M.T.A.'s language subjecting a state to "laws related to safety" is sufficiently clear to permit us to find, in P.A.T.H.'s petition for and acceptance of the regulatory exemptions, consent to suit in federal court under the F.E.L.A. Simply put, such a general statement by Congress does not have the specificity *Atascadero* requires.

### B.

Plaintiffs next contend that P.A.T.H.'s eleventh amendment immunity was waived by the statutes in which the states of New York and New Jersey consented to suits against the Port Authority. Those statutes, enacted by both New York and New Jersey, provide that "[t]he states of New York and New Jersey consent to suits, actions or proceedings of any form or nature at law, in equity or otherwise ... against the Port Authority." N.J.Stat. Ann. § 32:1–157 (West 1963); N.Y.Unconsol.Laws § 7101 (McKinney 1979).[2]

For purposes of this sub-section we will assume the construction of these statutes simply presents a question of express state waiver of immunity. Two federal court decisions have, without discussion, considered the construction of these statutory provisions consenting to suits against the Port Authority under this approach. *See Foster v. Port Authority Trans–Hudson Corp.,* No. 87 Civ. 4593 (MGC), slip op. at ——, 1988 W.L. 112904 (S.D.N.Y. Oct. 17,

1988); *Feeney v. Port Authority Trans–Hudson Corp.,* 693 F.Supp. 34 (S.D.N.Y. 1988).[3]

■ A state consent to suit statute does not necessarily work a waiver of eleventh amendment immunity. A state can waive its sovereign immunity from suit in state court without waiving the eleventh amendment's bar to suits against the state in federal court. *Atascadero State Hospital v. Scanlon,* 473 U.S. at 234, 105 S.Ct. at 3144. The test for waiver of eleventh amendment immunity is stringent. Consent to suit in federal court must be by "most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Welch,* 107 S.Ct. at 2946 (plurality opinion) (*quoting Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974)) (additional citation omitted). "In order for a state statute or constitutional provision to constitute a waiver of eleventh amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146. Under this test the consent provisions, N.J. Stat.Ann. § 32:1–157; N.Y.Unconsol.Laws § 7101, standing alone are insufficient to constitute a waiver of P.A.T.H.'s eleventh amendment immunity.[4]

■ The acts that contain the consent provisions, however, also provide that "[t]he foregoing consent is granted upon the condition that venue in any suit, action or proceeding against the Port Authority shall be laid within a county or a judicial district established by one of the said

---

**2.** *Port Authority Police Benevolent Association v. Port Authority,* 819 F.2d 413 (3d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987), did not squarely address the implications of this consent to suit provision in the context of either related legislation or congressional approval of an interstate compact under the compact clause. We do not read our decision in *Port Authority Police Benevolent Association* to foreclose our consideration of these issues.

**3.** In Section III. C., *infra,* we address plaintiffs' alternative argument that these provisions must be construed only to ascertain congressional

intent in approving an interstate compact. *See Petty v. Tennessee–Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

**4.** *Raysor v. Port Authority,* 768 F.2d 34, 38 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986), read the consent to suit provisions to permit suit against the Port Authority in federal court. While *Raysor* did not address the eleventh amendment, to the extent it holds that the Port Authority's eleventh amendment immunity was waived by the consent to suit provisions, we are in disagreement with it.

states or by the United States, and situated wholly or partially within the Port of New York District." N.J.Stat.Ann. § 32:1–162 (West 1963); N.Y.Unconsol.Laws § 7106 (McKinney 1979). Plaintiffs argue that the necessary implication of providing for venue in a federal judicial district is that the consent provisions were intended to waive P.A.T.H.'s eleventh amendment immunity from suit in federal court.

It is certainly arguable that the consent to suit statutes, read in light of this venue provision, create the "overwhelming implication" of consent to suit in federal court. The defendant suggests, in opposition, that the provision for venue in certain federal districts is intended to apply to actions over which there is some basis for federal jurisdiction independent of the consent provisions. It is not apparent to us that the venue provision applies in such cases, where consent to suit is not required. But whatever the purpose of this part of Section 32:1–162, we think the Supreme Court, by requiring proof of consent by "overwhelming implication," mandates that there be much more than inclusion of a reference to a federal judicial district in a venue provision. Not without some unease, we conclude that the venue provision fails to constitute the requisite showing that the states intended to waive P.A.T. H.'s eleventh amendment immunity. *See Foster*, No. 87 Civ. 4593 (MGC), slip op. at ——, 1988 W.L. 112904 (S.D.N.Y. Oct. 17, 1988).[5]

### C.

Lastly, plaintiffs rely on the theory of *Petty v. Tennessee–Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed. 2d 804 (1959). In that case, the Supreme Court held that Congress had conditioned its approval of an interstate compact that included a sue-and-be-sued provision upon implicit state waiver of eleventh amendment immunity. *See id.* at 281–82, 79 S.Ct.

at 789–90. The plaintiffs argue that Congress here similarly conditioned its approval on a waiver of the Port Authority's eleventh amendment immunity. Treating the meaning of the sue-and-be-sued provision as a question requiring examination of congressional intent is consistent with the approach taken by the Second Circuit Court of Appeals in analyzing a consent to suit provision in an interstate compact in *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39 (2d Cir.1977).

In *Petty*, the Supreme Court ruled that the construction of an interstate compact sanctioned by Congress under the compact clause was a question of federal law. *Id.* at 278–79, 79 S.Ct. at 788–89. The compact in *Petty* created the Tennessee–Missouri Bridge Commission, and gave it power to operate ferries across the Mississippi River. The compact gave the Commission the power to "sue and be sued in its own name." *Id.* at 277, 79 S.Ct. at 787. Congressional approval of the interstate compact in that case was on condition that the compact not "be construed to affect, impair or diminish any right, power or jurisdiction of ... any court ... of the United States over or in regard to any navigable waters or any commerce between the States." *Id.* at 281, 79 S.Ct. at 789.

The Supreme Court concluded that "[t]his proviso, read in light of the sue-and-be-sued clause in the compact reserves the jurisdiction of the federal courts to act in any matter arising under the compact over which they would have jurisdiction by virtue of the fact that Mississippi is a navigable stream and that interstate commerce is involved." *Id.* As the Supreme Court explained in *Edelman v. Jordan*, 415 U.S. 651, 672, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974), "[t]he question of waiver or consent under the Eleventh Amendment was found in [*Petty*] to turn on whether Congress had intended to abrogate the immunity in question, and whether the state

---

5. We also observe that the legislative histories of the New York and New Jersey acts containing both the consent and the venue provisions do not explicitly address eleventh amendment immunity. *But cf.* New York State Legislative Annual 204 (1950) (including a decision dismiss-

ing on eleventh amendment grounds a suit against the Port Authority in federal court, *Howell v. Port of New York Authority*, 34 F.Supp. 797 (D.N.J.1940), in a list of cases holding that the Port Authority "share[s] the governmental immunity of the states themselves").

by its participation in the program authorized by Congress had in effect consented to the abrogation of that immunity."

Since it decided *Petty*, the Supreme Court has held that congressional intention to abrogate eleventh amendment immunity "must be expressed in unmistakably clear language." *E.g., Welch*, 107 S.Ct. at 2948 (plurality opinion). To the extent that *Petty* suggests that general congressional language can work an abrogation of state eleventh amendment immunity, we do not believe it retains any vitality in light of the Supreme Court decisions in *Atascadero* and *Welch*. Although the plurality in *Welch* did not expressly overrule *Petty*, explaining that that case "involved an interstate compact that expressly permitted the bi-state corporation to sue and be sued," *Welch*, 107 S.Ct. at 2947 n. 7, we do not believe that the clear statement requirement applies with any less force where Congress speaks in a Joint Resolution approving an interstate compact than where it speaks through any other legislative enactment.

■ In the case before us, the interstate compact that created the Port Authority was approved subject to a congressional condition similar to, albeit more general than, the one in *Petty*.[6] This congressional proviso states that the compact "shall not be construed as impairing or in any manner affecting any right or jurisdiction of the United States in and over the region which forms the subject of said agreement." 42 Stat. 174, 177 (1921). We do not believe this general language upon which Congress's approval of the interstate compact was conditioned speaks with sufficient clarity to abrogate P.A.T.H.'s eleventh amend-

ment immunity. *See Welch*, 107 S.Ct. at 2948 (plurality opinion).

### IV.

Consequently, because we conclude that P.A.T.H. retains its eleventh amendment immunity, the orders of the district court will be affirmed.

---

6. In this case, the Port Authority's sue-and-be-sued provision was not a part of the compact when it was approved by Congress. Rather, it was enacted some thirty years later by the legislatures of New York and New Jersey pursuant to congressional authorization in Article 7 of the compact which reads "[t]he port authority shall have such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either state concurred in by the legislature of the other." 42 Stat. 174, 177 (1921).

We assume without deciding that this joint state legislative action authorized in advance by Congress constitutes an interstate compact. *See Cuyler v. Adams*, 449 U.S. 433, 440, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981). Of course, any suggestion that Congress actually considered the implications of its approval of the compact here on the Port Authority's eleventh amendment immunity would be an obvious fiction. *Cf. Petty*, 359 U.S. at 280–81, 79 S.Ct. at 789.