# PORT AUTHORITY TRANS-HUDSON CORP.
## *v.* FEENEY

No. 89–386.   Argued February 26, 1990—Decided April 30, 1990*

---

*Together with *Port Authority Trans-Hudson Corp.* v. *Foster*, also on certiorari to the same court (see this Court's Rule 12.2).

O'CONNOR, J., delivered the opinion for a unanimous Court with respect to Part I, and the opinion of the Court with respect to Part II, in which REHNQUIST, C. J., and WHITE, SCALIA, and KENNEDY, JJ., joined. BRENNAN, J., filed an opinion concurring in part and concurring in the judgment, in which MARSHALL, BLACKMUN, and STEVENS, JJ., joined, *post*, p. 309.

*Joseph Lesser* argued the cause for petitioner. With him on the briefs were *Arthur P. Berg, Anne M. Tannenbaum,* and *Carlene V. McIntyre.*

*Richard W. Miller* argued the cause for respondents. With him on the brief was *Peter M. J. Reilly.*†

JUSTICE O'CONNOR delivered the opinion of the Court.

These cases call upon the Court to determine whether the Eleventh Amendment bars respondents' suits in federal

---

†*Benna Ruth Solomon* and *Charles Rothfield* filed a brief for the Council of State Governments et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for American Airlines, Inc., et al. by *Lawrence Mentz;* and for Pan American World Airways, Inc., et al. by *Raymond T. Munsell.*

court against an entity created by New York and New Jersey to operate certain transportation and other facilities.

## I

In 1921, New York and New Jersey entered a bistate compact creating the Port Authority of New York and New Jersey (Authority). 1921 N. J. Laws, chs. 151, 154; see N. J. Stat. Ann. § 32:1–1 *et seq.* (West 1963); N. Y. Unconsol. Laws § 6401 *et seq.* (McKinney 1979). In accord with the Constitution's Compact Clause, Art. I, § 10, cl. 3, Congress consented to the compact. 42 Stat. 174 (1921). Through the compact, the States created the Authority to achieve "a better co-ordination of the terminal, transportation and other facilities of commerce in, about and through the port of New York," N. J. Stat. Ann. § 32:1–1 (West 1963); N. Y. Unconsol. Laws § 6401 (McKinney 1979), and lodged in the Authority "full power and authority to purchase, construct, lease and/or operate any terminal or transportation facility within [the port] district." N. J. Stat. Ann. § 32:1–7 (West 1963); N. Y. Unconsol. Laws § 6407 (McKinney 1979). See generally *United States Trust Co. of N. Y. v. New Jersey,* 431 U. S. 1, 4–5 (1977); E. Bard, The Port of New York Authority (1942). The Port Authority Trans-Hudson Corp. (PATH), petitioner in these consolidated cases, is a wholly owned subsidiary of the Authority that operates an interstate railway system and other facilities. PATH is entitled to "all of the privileges, immunities, tax exemptions and other exemptions of the port authority" and is subject to suit to the same extent as the Authority. See N. J. Stat. Ann. § 32:1–35.61 (West 1963); N. Y. Unconsol. Laws § 6612 (McKinney 1979).

Respondents Patrick Feeney and Charles Foster alleged injuries incurred during their employment with PATH. Both filed separate complaints against PATH in the United States District Court for the Southern District of New York to recover damages pursuant to the Federal Employers' Li-

ability Act (FELA), 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.* (1982 ed.), the Boiler Inspection Act, 36 Stat. 913, as amended, 45 U. S. C. § 22 (1982 ed.), and the Safety Appliance Act, 27 Stat. 531, 45 U. S. C. § 1 (1982 ed.). PATH moved to dismiss both complaints, asserting that PATH enjoyed New York and New Jersey's sovereign immunity and thus that the Eleventh Amendment deprived the federal court of jurisdiction over the suits. Relying in part on *Port Authority Police Benevolent Assn., Inc.* v. *Port Authority of New York and New Jersey,* 819 F. 2d 413 (CA3), cert. denied, 484 U. S. 953 (1987), the District Court concluded that the Eleventh Amendment deprived it of jurisdiction and dismissed respondents' complaints. App. to Pet. for Cert. A–27, A–46. In *Port Authority Police Benevolent Assn.,* the Court of Appeals for the Third Circuit reasoned that because the States had established the Authority as a state agency and continued to exercise extensive control over its operations, the Authority was entitled to Eleventh Amendment immunity. 819 F. 2d, at 413. The court also found no waiver of that immunity. *Id.,* at 418, n. 2.

The Court of Appeals for the Second Circuit held that the Eleventh Amendment did not bar Feeney's suit because "the Eleventh Amendment immunity either does not extend to [PATH] or has been waived." 873 F. 2d 628, 628–629 (1989). The court concluded that PATH did not enjoy the States' sovereign immunity, principally because the treasuries of New York and New Jersey are largely insulated from PATH's liabilities. *Id.,* at 631–632. In reaching its conclusion that the States had waived any immunity that PATH possessed, the court relied upon two provisions of an Act governing suits against the Authority and its subsidiaries and passed by New York (in 1950) and New Jersey (in 1951). 1951 N. J. Laws, ch. 204; 1950 N. Y. Laws, ch. 301; see N. J. Stat. Ann. § 32:1–157 *et seq.* (West 1963); N. Y. Unconsol. Laws § 7101 *et seq.* (McKinney 1979). The first section provided that the States "consent to suits, actions or proceedings of any form

or nature at law, in equity or otherwise . . . against the Port of New York Authority." N. J. Stat. Ann. § 32:1–157 (West 1963); N. Y. Unconsol. Laws § 7101 (McKinney 1979). Another section provided in part:

> "The foregoing consent [of N. J. Stat. Ann. § 32:1–157; N. Y. Unconsol. Laws § 7101] is granted upon the condition that venue in any suit, action or proceeding against the Port Authority shall be laid within a county or a judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District. The Port Authority shall be deemed to be a resident of each such county or judicial district for the purpose of such suits, actions, or proceedings." N. J. Stat. Ann. § 32:1–162 (West 1963); N. Y. Unconsol. Laws § 7106 (McKinney 1979).

The court concluded that, despite the "somewhat anomalous" location of an indication of waiver in a venue provision, the statutory provisions demonstrated "an intent to allow the Port Authority to be sued in the designated federal courts and is thus an explicit waiver, albeit partial, of the Eleventh Amendment [immunity]." 873 F. 2d, at 633. The Second Circuit reversed the District Court's dismissal of Foster's complaint on identical grounds. 873 F. 2d 633 (1989). Two days before the Second Circuit issued these decisions, the Third Circuit had reaffirmed and elaborated its conclusion that the States had not waived the sovereign immunity that extended to PATH. See *Leadbeater* v. *Port Authority Trans-Hudson Corp.*, 873 F. 2d 45 (1989), cert. pending, No. 89–479. That court acknowledged that "[i]t is certainly arguable that the consent to suit statutes, read in light of this venue provision, create the 'overwhelming implication' of consent to suit in federal court," but held that "[n]ot without some unease, we conclude that the venue provision fails to constitute the requisite showing that the states intended to waive P. A. T. H.'s [E]leventh [A]mendment immunity." *Id.*, at 49. To resolve this conflict, we granted certiorari to

review the consolidated decisions of the Second Circuit, 493 U. S. 932 (1989), and we now affirm.

## II

The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign State." This Court has drawn upon principles of sovereign immunity to construe the Amendment to "establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89, 100 (1984) (quoting *Employees* v. *Missouri Dept. of Public Health and Welfare*, 411 U. S. 279, 280 (1973)); see also *Pennsylvania* v. *Union Gas Co.*, 491 U. S. 1, 29 (1989) (SCALIA, J., concurring in part and dissenting in part); *Welch* v. *Texas Dept. of Highways and Public Transp.*, 483 U. S. 468 (1987) (plurality opinion). The Eleventh Amendment bar to suit is not absolute. States may consent to suit in federal court, see, *e. g.*, *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 241 (1985); *Clark* v. *Barnard*, 108 U. S. 436, 447 (1883), and, in certain cases, Congress may abrogate the States' sovereign immunity. See, *e. g.*, *Dellmuth* v. *Muth*, 491 U. S. 223 (1989).

Respondents challenge PATH's claim that it is a state agency entitled to the Eleventh Amendment immunity of New York and New Jersey. *Petty* v. *Tennessee-Missouri Bridge Comm'n*, 359 U. S. 275 (1959), guides our resolution of this issue. In *Petty*, the Court considered whether the Eleventh Amendment barred a federal court from entertaining an action under the Jones Act, 46 U. S. C. § 688 (1958 ed.), brought against the Tennessee-Missouri Bridge Commission. Similar to the Authority, the Commission constructed and operated transportation facilities pursuant to a

bistate compact entered by Tennessee and Missouri and ratified by Congress. The Court "assume[d] *arguendo* that this suit must be considered as one against the States since this bi-state corporation is a joint or common agency of Tennessee and Missouri," 359 U. S., at 279, but concluded that the States had waived any immunity that the Commission possessed. Because we find that the States of New York and New Jersey have consented to suit against PATH in federal court, we conclude that a similar course is appropriate in this case.

Well-established law governs abrogation and waiver of Eleventh Amendment immunity. Because "abrogation of sovereign immunity upsets 'the fundamental constitutional balance between the Federal Government and the States,'" *Dellmuth* v. *Muth, supra,* at 227 (quoting *Atascadero State Hospital,* 473 U. S., at 238), and because States are unable directly to remedy a judicial misapprehension of that abrogation, the Court has adopted a particularly strict standard to evaluate claims that Congress has abrogated the States' sovereign immunity. See *id.,* at 242 ("Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute"). Respondents do not assert that Congress has abrogated the States' sovereign immunity through any of the statutes that underlie their claims against PATH, and such arguments would be unavailing. See *Welch* v. *Texas Dept. of Highways and Public Transp.,* 483 U. S., at 468 (opinion of Powell, J.); *id.,* at 495 (SCALIA, J., concurring in part and concurring in judgment). Similar solicitude for States' sovereign immunity underlies the standard that this Court employs to determine whether a State has waived that immunity. The Court will give effect to a State's waiver of Eleventh Amendment immunity "'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Atascadero State Hospital, supra,* at 239–

240 (quoting *Edelman* v. *Jordan*, 415 U. S. 651, 673 (1974) (internal quotation omitted)). A State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts, see, *e. g.*, *Florida Dept. of Health and Rehabilitative Services* v. *Florida Nursing Home Assn.*, 450 U. S. 147, 150 (1981) *(per curiam)*, and "[t]hus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Atascadero State Hospital, supra*, at 241.

New York and New Jersey have expressly consented to suit in expansive terms. The statutory consent to suit provision, which provides that the States "consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise . . . against the Port of New York Authority," N. J. Stat. Ann. § 32:1–157 (West 1963); N. Y. Unconsol. Laws § 7101 (McKinney 1979), might be interpreted to encompass the States' consent to suit in federal court as well as state court. But such a broadly framed provision may also reflect only a State's consent to suit in its own courts. See, *e. g.*, *Atascadero State Hospital, supra*, at 241. Sensitive to the values underlying the Eleventh Amendment, the Court has required that consent to suit in federal court be express and thus has construed such ambiguous and general consent to suit provisions, standing alone, as insufficient to waive Eleventh Amendment immunity. See 473 U. S., at 241 (general consent to suit provision did not waive Eleventh Amendment immunity because the "provision does not specifically indicate the State's willingness to be sued in federal court"); *Great Northern Life Ins. Co.* v. *Read*, 322 U. S. 47, 54 (1944) ("When a state authorizes a suit against itself . . . , it is not consonant with our dual system for the federal courts to be astute to read the consent to embrace federal as well as state courts"). Other textual evidence of consent to suit in federal courts may resolve that ambiguity and sufficiently

clearly establish the scope of the State's more general consent to suit. In such circumstances, the Court must give effect to that clearly indicated consent to suit in federal court.

In this case, the statutory venue provision suffices to resolve any ambiguity contained in the States' general consent to suit provision by expressly indicating that the States' consent to suit extends to suit in federal court. The section provides that "[t]he foregoing consent [of N. J. Stat. Ann. § 32:1–157 (West 1963); N. Y. Unconsol. Laws § 7101 (McKinney 1979)] is granted on the condition that venue . . . shall be laid within a county or judicial district, established by one of said States or by the United States, and situated wholly or partially within the Port of New York District." N. J. Stat. Ann. § 32:1–162 (West 1963); N. Y. Unconsol. Laws § 7106 (McKinney 1979). This provision eliminates the danger, identified in *Atascadero State Hospital, supra,* and *Great Northern Life Ins. Co., supra,* that federal courts may mistake a provision intended to allow suit in a State's own courts for a waiver of Eleventh Amendment immunity. Petitioner does not deny that the phrase "judicial district, established . . . by the United States" refers to the United States District Courts, but rather argues that the reference to venue cannot shape our construction of the general consent to suit provision. Although one might not look first to a venue provision to find evidence of waiver of sovereign immunity, we believe that the provision directly indicates the extent of the States' waiver embodied in the consent provision. The States passed the venue and consent to suit provisions as portions of the same Acts that set forth the nature, timing, and extent of the States' consent to suit. The venue provision expressly refers to and qualifies the more general consent to suit provision. Additionally, issues of venue are closely related to those concerning sovereign immunity, as this Court has indicated by emphasizing that "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State School*

*and Hospital* v. *Halderman*, 465 U. S., at 99.   Petitioner's related argument that a venue provision cannot broaden the consent to suit provision begs the question what the States intended through the consent provision.   The venue provision elucidates rather than broadens the consent to suit provision: It provides persuasive textual evidence that the consent to suit provision encompasses suits in federal court, and broadens the effect of the consent provision only to the extent of removing an ambiguity that called forth this Court's prudential canon of construction.   The venue provision would hardly qualify "[t]he foregoing consent" unless the States intended that consent to include suits in federal court.

Finally, petitioner suggests no "reasonable construction," *Atascadero State Hospital*, 473 U. S., at 241, that might be given to the venue provision's phrase, "judicial district, established . . . by the United States," other than that the States consented to suit in federal court.   See Brief for Petitioner 36–38; Tr. of Oral Arg. 15–16.   We agree with the court below that the phrase cannot reasonably be construed as an ineffectual attempt to limit venue for suits for which Congress has abrogated the States' immunity.   See 873 F. 2d, at 633; see also *Leadbeater*, 873 F. 2d, at 49 (declining to accept similar construction).   *Amici curiae* supporting petitioner also confess their inability to provide any reasonable alternative construction of the phrase.   Brief for Council of State Governments et al. as *Amici Curiae* 17.   The Third Circuit, in the course of upholding petitioner's immunity defense in a similar suit, professed similar bafflement regarding the import of the venue provision.   See *Leadbeater*, 873 F. 2d, at 49; *supra*, at 304.   Petitioner essentially presents the choice between giving the venue provision its natural meaning and giving the provision no meaning at all.   Charged with giving effect to the statute, we do not find the choice to be a difficult one.

We conclude that the statutory consent to suit provision, elucidated by the venue provision, establishes the States'

waiver of any Eleventh Amendment immunity that might otherwise bar respondents' suits against petitioner. The judgments of the Court of Appeals for the Second Circuit are therefore

*Affirmed.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE STEVENS join, concurring in part and concurring in the judgment.

While I agree with the Court that New York and New Jersey consented, on behalf of the Port Authority Trans-Hudson Corporation (PATH), to suit in federal court, I write separately to add that their consent is not necessary to our decision today. I do not join Part II of the Court's opinion[1] because it presupposes the validity of this Court's current characterization of the Eleventh Amendment as cloaking the States with sovereign immunity unless abrogated by Congress or waived by the States themselves. I adhere to my belief that this doctrine "rests on flawed premises, misguided history, and an untenable vision of the needs of the federal system it purports to protect." *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 248 (1985) (BRENNAN, J., dissenting); see also *Welch* v. *Texas Dept. of Highways and Public Transp.*, 483 U. S. 468, 497 (1987) (BRENNAN, J., dissenting). Nevertheless, under either the Court's or my own view of the Eleventh Amendment,[2] PATH and similarly situated interstate entities may be subjected to suit in federal courts.

---

[1] I join Part I of the opinion of the Court.

[2] The Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

## I

Respondents seek to hold PATH liable under a variety of federal statutes for injuries they have suffered.[3] In my view, the States' consent is irrelevant to these suits for two reasons. First, the Eleventh Amendment secures States only from being haled into federal court by out-of-state or foreign plaintiffs asserting state-law claims, where jurisdiction is based on diversity. The Amendment did not constitutionalize some general notion of state sovereign immunity; it is a jurisdictional provision. Neither States nor Congress may consent to jurisdiction that is not provided and, therefore, the question is not waiver but reach. In my opinion, the Eleventh Amendment does not reach, and therefore does not bar, suits brought under federal-question or admiralty jurisdiction. See *Welch, supra,* at 504–516 (BRENNAN, J., dissenting); *Papasan* v. *Allain,* 478 U. S. 265, 292–293 (1986) (BRENNAN, J., concurring in part, concurring in judgment in part, and dissenting in part); *Green* v. *Mansour,* 474 U. S. 64, 78–79 (1985) (BRENNAN, J., dissenting); *Atascadero, supra,* at 252–302 (BRENNAN, J., dissenting); see also *Pennsylvania* v. *Union Gas Co.,* 491 U. S. 1, 23 (1989) (STEVENS, J., concurring).

Second, to the extent that States retain a common-law defense of state sovereign immunity, States surrendered that immunity, insofar as challenges under federal statutes are concerned, "'in the plan of the Convention'"[4] when they

---

[3] Both Patrick Feeney and Charles T. Foster asserted claims under the Federal Employers' Liability Act (FELA), 45 U. S. C. § 51 *et seq.* (1982 ed.), the Boiler Inspection Act, 45 U. S. C. § 22 (1982 ed.), and the Safety Appliance Act, 45 U. S. C. § 1 (1982 ed.).

[4] The phrase is Alexander Hamilton's. He used it in a passage reassuring States, which might have been concerned with the securities they issued and might not have wished to honor, that the grant of diversity jurisdiction in Article III would not annul their defense of sovereign immunity should they be sued in federal court under state law on a writ of debt.

"It is inherent in the nature of sovereignty, not to be amenable to the suit of an individual *without its consent.* This is the general sense, and the

agreed to form a union and granted Congress specifically enumerated powers. See *Edelman* v. *Jordan*, 415 U. S. 651, 687 (1974) (BRENNAN, J., dissenting); *Employees* v. *Missouri Dept. of Public Health and Welfare*, 411 U. S. 279, 318–322 (1973) (BRENNAN, J., dissenting); see also *Pennsylvania* v. *Union Gas Co.*, *supra*, at 14 (plurality opinion) (quoting *Parden* v. *Terminal Railway of Alabama Docks Dept.*, 377 U. S. 184, 191–192 (1964)). Neither the Eleventh Amendment nor the ancient doctrine of sovereign immunity, as I view them, would bar respondents' suits even had they been brought directly against New York or New Jersey because both suits allege violations of federal statutes. Thus, I would affirm the decisions below on that ground.

## II

Even under the Court's current interpretation of the Eleventh Amendment, however, I do not believe that PATH had any defense to waive. The Eleventh Amendment bars federal jurisdiction only over suits "commenced or prosecuted against one of the United States." PATH is a subsidiary of the Port Authority of New York and New Jersey (Port Authority) which is a bistate agency created by interstate compact; it is not "one of the United States." By its terms, then, the Eleventh Amendment would appear to be inapplicable. But this Court has created two very limited exceptions to a literal reading of the phrase "one of the United States," so that immunity applies: (1) where the entity being sued is so intricately intertwined with the State that it can best be un-

_____

general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the Government of every State in the Union. *Unless therefore, there is a surrender of this immunity in the plan of the Convention, it will remain with the States.* . . . [T]here is no color to pretend that the state governments would, by the adoption of that plan, be divested of the privilege of paying their own debts in their own way, free from every constraint, but that which flows from the obligations of good faith." The Federalist No. 81, p. 567 (H. Dawson ed. 1876) (second emphasis added).

derstood as an "arm of the State"; and (2) where the State, though not a nominal party, is the real party in interest. I believe that no bistate agency falls within the first exception and that no bistate agency falls within the second exception if, like the Port Authority, it is independently and solely liable for any judgments levied against it.[5]

## A

The inherent nature of interstate agencies precludes their being found so intricately intertwined with the State as to constitute an "arm of the State." The Court developed the "arm-of-the-State" doctrine as a tool for determining which entities created by a State enjoy its Eleventh Amendment protection and which do not. This Court has found that a private suit against a state agency is barred by the Eleventh Amendment. See *Alabama* v. *Pugh*, 438 U. S. 781, 782 (1978) (reversing a lower court's decision to enjoin the State of Alabama and the Alabama Board of Corrections). Nonetheless, this Court has long held that counties and cities are not so integrally related to the State that they are shielded from suit in federal court. In *Lincoln County* v. *Luning*, 133 U. S. 529, 530 (1890), the Court held that the Eleventh Amendment does not bar suit against counties in federal court, noting that the "Eleventh Amendment limits the jurisdiction [of the federal courts] only as to suits against a State." The Court continued: "[W]hile the county is territorially a

---

[5] This Court has twice before addressed the question whether a bistate entity could raise an Eleventh Amendment defense to federal jurisdiction, and twice rejected the specific immunity claim presented. See *Petty* v. *Tennessee-Missouri Bridge Comm'n*, 359 U. S. 275, 279–280 (1959) (not reaching "arm-of-the-State" issue but finding that any Eleventh Amendment bar had been waived); *Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency*, 440 U. S. 391, 401–402 (1979) (finding subject to federal jurisdiction at least a bistate entity whose parent States disclaimed any immunity for it, whose compact failed to disclose any congressional intent to protect it from federal jurisdiction, and whose obligations were not binding on either parent State).

part of the State, yet politically it is also a corporation created by and with such powers as are given to it by the State. In this respect it is a part of the State only in that remote sense in which any city, town, or other municipal corporation may be said to be a part of the State." *Ibid.* See also *Moor* v. *County of Alameda,* 411 U. S. 693, 721 (1973) (county); *Graham* v. *Folsom,* 200 U. S. 248, 255 (1906) (county); *Workman* v. *New York City,* 179 U. S. 552, 565–566 (1900) (city); cf. *Chicot County* v. *Sherwood,* 148 U. S. 529, 533–534 (1893) (rejecting state legislature's attempt to insulate county from federal jurisdiction by providing that county could only be sued in county courts).

In *Mt. Healthy City Board of Education* v. *Doyle,* 429 U. S. 274, 280 (1977), the Court noted that "[t]he bar of the Eleventh Amendment to suit in federal courts . . . does not extend to counties and similar municipal corporations" and looked to the "nature of the entity created by state law" to determine whether local school boards in Ohio appeared to be more like a county or city or more like an arm of the State. The Court concluded that the school boards' extensive powers to issue bonds and levy taxes, and their categorization under state law as a form of political subdivision, rendered them "[o]n balance . . . more like a county or city." *Ibid.*

The rule to be derived from our cases is that the Eleventh Amendment shields an entity from suit in federal court only when it is so closely tied to the State as to be the direct means by which the State acts, for instance a state agency. In contrast, when a State creates subdivisions and imbues them with a significant measure of autonomy, such as the ability to levy taxes, issue bonds, or own land in their own name, these subdivisions are too separate from the State to be considered its "arms." This is so even though these political subdivisions exist solely at the whim and behest of their State. See, *e. g., ibid; Graham* v. *Folsom, supra,* at 252.

Interstate agencies lack even this close link to any one State. While a State has plenary power to create and destroy its political subdivisions, a State enjoys no such hegemony over an interstate agency. To begin with, a State cannot create such an agency at will. In order to do so, it must persuade another State, or several other States, to join it. Moreover, the creation of an interstate agency requires each State to relinquish to one or more sister States a part of its sovereignty. The regulatory powers exercised by an interstate agency are powers no longer inhering in any one compacting State; they are powers shared. Likewise, no one State has complete dominion over property owned, and proprietary activities operated, by such an agency. For instance, in order to achieve the practical advantages of coordinated planning and administration through the Port Authority, New York and New Jersey each has ceded partial control over the regulation and operation of transportation facilities in its own State since 1921 and for the foreseeable future. In order to change the Port Authority's organization or powers, the legislatures of both States must pass a bill to that effect.

In addition, States may not create an interstate agency without the express approval of Congress; they surrendered their right to do so "in the plan of the Convention" when they accepted the Interstate Compact Clause. The Clause provides:

> "No State shall, without the Consent of the Congress, . . . enter into any Agreement or Compact with another State. . . ." U. S. Const., Art. I, § 10, cl. 3.

The Constitution also prohibits States from entering into any "Treaty, Alliance, or Confederation" either with other States or with foreign governments. Art. I, § 10, cl. 1.[6] The In-

---

[6]The Framers had serious concerns about this problem, as shown by their inclusion of provisions even stricter than those in the Articles of

terstate Compact Clause and the State Treaty Clause ensure that whatever sovereignty a State possesses within its own sphere of authority ends at its political border.[7]

Thus, it is not within the autonomous power of any State to create and regulate an interstate agency. Each State's sovereign will is circumscribed by that of the other States in the compact and circumscribed further by the veto power relinquished to Congress in the Constitution. If counties are not "arms" of their States merely because the State conferred a certain autonomy on them—an autonomy it can withdraw at

---

Confederation. In the Articles of Confederation, the limitation on the "sovereignty, freedom and independence" retained by each State was:

" 'No two or more states shall enter into any treaty, confederation or alliance whatever between them, without the consent of the united states in congress assembled, specifying accurately the purpose for which the same is to be entered into, and how long it shall continue.' " Frankfurter & Landis, The Compact Clause of the Constitution—A Study in Interstate Adjustments, 34 Yale L. J. 685, 693–694 (1925) (quoting Art. VI, Articles of Confederation).

[7] That the Interstate Compact and State Treaty Clauses reflect a disfavor of intermediate-level sovereigns is well settled. See Frankfurter & Landis, *supra*, at 694 ("The absence of any powerful national capabilities on the part of the Confederacy, except in the conduct of foreign affairs, underlines the significance of these clauses [in the Articles of Confederation] as insurance against competing political power. This curb upon political combinations by the States was retained almost *in haec verba* by the Constitution"); V. Thursby, Interstate Cooperation, A Study of the Interstate Compact 4 (1953) (suggesting that one reason for the Compact Clause was that the Federal Government could be endangered by political combinations of the States); *Virginia v. Tennessee*, 148 U. S. 503, 518 (1893) (declaring that the compacts to which the Compact Clause refers are "those which may tend to increase and build up the political influence of the contracting States, so as to encroach upon or impair the supremacy of the United States or interfere with their rightful management of particular subjects placed under their control"); *Barron v. Baltimore*, 7 Pet. 243, 248 (1833) (explaining that agreements between States for political purposes could "scarcely fail to interfere with the general purposes and intent of the [C]onstitution").

will—then an interstate agency, over which none of the compacting States exercises such untrammeled control, cannot be said to be an "arm" of any of them.[8]

## B

Although this Court has held that a suit in which the State, rather than the nominal defendant, is the real party in interest is a suit against "one of the United States" within the meaning of the Eleventh Amendment, a State is the real party in interest generally only when the State is directly liable for a money judgment.[9]   In *Ford Motor Co.* v. *Department of Treasury of Indiana,* 323 U. S. 459, 464 (1945), the Court held that a suit against a state treasury department and the individuals constituting its board for a refund of taxes

---

[8] *Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency,* 440 U. S. 391 (1979), is not inconsistent with this analysis.   In that case, we noted that the Eleventh Amendment is available only to "'one of the United States,'" that its protection has never been extended to political subdivisions even though such entities exercise a "'slice of state power,'" and that there was "no justification for reading additional meaning into the limited language of the Amendment" so as to immunize a bistate agency unless Congress had indicated a desire to place the agency in a special position.   *Id.,* at 400–401.   The Court noted that neither of the States that created the bistate agency could veto its actions and observed that the conclusion that "TRPA is not in fact an arm of the State subject to its control is perhaps most forcefully demonstrated by the fact that California has resorted to litigation in an unsuccessful attempt to impose its will on TRPA." *Id.,* at 402.

[9] This Court has also found that the Eleventh Amendment bars a suit seeking equitable relief where a state officer defendant is not alleged to have acted contrary to state or federal law and the State is the real party in interest.   See *Cory* v. *White,* 457 U. S. 85 (1982) (interpleader action). However, no State is a real party in interest in an action for prospective injunctive relief brought against an interstate agency, because any injunction would run against the agency, which is not an "arm of the State."   See Part II–A, *supra.*   Therefore, actions for prospective relief against an interstate agency would not be barred by the Eleventh Amendment, as the Court interprets it, whatever the agency's relationship to the States' treasuries.   See generally *Ex parte Young,* 209 U. S. 123 (1908); *Quern* v. *Jordan,* 440 U. S. 332 (1979).

was a suit against the State because "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." This Court relied on that decision 30 years later in *Edelman* v. *Jordan*, 415 U. S., at 677, in holding that the Eleventh Amendment barred a suit brought in federal court in which the nominal defendants were Illinois officials because the relief sought was an injunction ordering retroactive payments of benefits from the state treasury. The Court observed that "the rule has evolved that a suit [in federal court] by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.*, at 663. See also *Kennecott Copper Corp.* v. *State Tax Comm'n*, 327 U. S. 573 (1946) (tax refund); *Great Northern Life Ins. Co.* v. *Read*, 322 U. S. 47 (1944) (tax refund); *Smith* v. *Reeves*, 178 U. S. 436 (1900) (tax refund); see generally *Osborne* v. *Bank of United States*, 9 Wheat. 738 (1824) (rejecting an Eleventh Amendment defense because the nominal defendant, not the State, was the real party in interest).[10]

---

[10] This Court has not decided which arrangements between a State and a nominal defendant are sufficient to establish that the State is the real party in interest for Eleventh Amendment purposes. It may be that a simple indemnification clause, without more, does not trigger the doctrine. Lower courts have uniformly held that States may not cloak their officers with a personal Eleventh Amendment defense by promising, by statute, to indemnify them for damages awards imposed on them for actions taken in the course of their employment. See, *e. g.*, *Blaylock* v. *Schwinden*, 862 F. 2d 1352, 1354, n. 1 (CA9 1988) ("The eleventh amendment prohibits a district court from ordering payment of a judgment from the state treasury. The court may properly order the *officials* to pay damages under § 1983, but if the officials desire indemnification under the state statute, they must bring their own action in state court"); *Duckworth* v. *Franzen*, 780 F. 2d 645, 650–651 (CA7 1985) ("[T]he purpose of the Eleventh Amendment is only to protect the state against involuntary liability. If the State chooses to pick up the tab for its errant officers, its liability for their torts

Conversely, when a State is not liable for the obligations of an interstate agency, it is not a real party in interest in a suit against that agency. The court below found that no State is liable for PATH's obligations. It concluded:

"We believe it clear that a judgment against PATH would not be enforceable against either New York or New Jersey. The Port Authority is explicitly barred from pledging the credit of either state or from borrowing money in any name but its own. Even the provision [permitting] the appropriation of moneys for administrative expenses up to $100,000 per year requires prior approval by the governor of each state and an actual appropriation [by the legislature] before obligations for such expenses may be incurred. Moreover, the [provision's] phrase 'salaries, office and other adminstrative expenses' clearly limits this essentially optional obligation of the two states to a very narrow category of expenses and thus also evidences an intent to insulate the states' treasuries from the vast bulk of the Port Authority's operating and capital expenses, including personal injury judgments. No provision com.nits the treasuries of the two states to satisfy judgments against the Port Authority." 873 F. 2d 628, 631 (CA2 1989).

Therefore neither New York nor New Jersey is a real party in interest in respondents' suits, as this Court has understood and applied the concept in the Eleventh Amendment area.

C

This is not to say that the only restriction on whether an interstate agency can be sued in federal court is the Eleventh

is voluntary. . . . Moreover, it would be absurd if all a state had to do to put its employees beyond the reach of section 1983 and thereby make the statute ineffectual except against employees of local governments . . . was to promise to indemnify state employees for any damages awarded in such a suit"); *Wilson* v. *Beebe,* 770 F. 2d 578, 588 (CA6 1985) ("State cannot clothe [state officer] with [Eleventh Amendment] immunity by voluntarily agreeing to pay any judgment rendered against him").

Amendment. Congress may provide an interstate agency with an affirmative defense to its federal statutory obligations as Congress wishes, subject only to independent constitutional strictures such as the Equal Protection Clause. Congress would ordinarily be expected to address the matter through a specific statutory provision. It may also be that a court could legitimately infer Congress' intention to provide such a defense from its consent to an interstate compact the terms of which patently attempt to grant immunity from suit in federal court. See *Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency,* 440 U. S. 391, 401 (1979).

But it cannot be disputed that there is no such showing here. Congress has not passed any law conferring any immunity on the Port Authority. Nor did the compact to which Congress consented include any provision attempting to grant immunity from suit in federal court. Consequently, I believe that this Court, following its current view of the Eleventh Amendment, could have rested its decision today on the absence of an Eleventh Amendment defense as well as on waiver.