**ENTERGY ARKANSAS, INC., an Arkansas corporation; Entergy Gulf States, Inc., a Texas corporation; Entergy Louisiana, Inc., a Louisiana corporation; Wolf Creek Nuclear Operating Corporation, a Delaware corporation; Plaintiffs–Appellees,**

**Central Interstate Low–Level Radioactive Waste Commission; Plaintiff–Appellee,**

**U.S. Ecology, Inc., a California corporation; Intervenor Plaintiff–Appellee,**

v.

**State of NEBRASKA; Nebraska Department of Environmental Quality; Nebraska Department of Health and Human Services Regulation & Licensure; The Governor, of the State of Nebraska; The Director, of the Nebraska Department of Environmental Quality; The Director, of the Nebraska Department of Health and Human Services Regulation and Licensure, Defendants–Appellants.**

No. 02–3747.

United States Court of Appeals, Eighth Circuit.

April 21, 2004.

Thomas Edwin Johnson, John Paul Heil, Patrick J. Ickes, Baird & Holm, Omaha,

NE, Alan E. Peterson, Shawn D. Renner, Cline & Williams, Lincoln, NE, for Plaintiffs–Appellees.

Steven G. Seglin, Crosby & Guenzel, Lincoln, NE, for Intervenor Plaintiff–Appellee.

J. Kirk Brown, Jon Cumberland Bruning, David D. Cookson, Jodi M. Fenner, Attorney General's Office, Patrick T. O'Brien, Butler & Galter, Lincoln, NE, Mark L. Austrian, John L. Wittenborn, Thomas Wilfried Mitchell, Lisa Goldblatt, Michael R. McCarthy, Kathryn McMahon–Lohrer, Collier & Shannon, William Bradford Reynolds, Howrey & Simon, Washington, DC, for Defendants–Appellants.

Chief Judge LOKEN, Judge RILEY, and Judge COLLOTON would grant the petition for rehearing en banc.

RILEY, Circuit Judge, with whom LOKEN, Chief Judge, and COLLOTON, Circuit Judge, join, dissenting.

Federal courts have ordered the State of Nebraska (Nebraska) and its citizens to pay over $151 million to the Central Interstate Low–Level Radioactive Waste Commission (Commission). *Entergy Ark., Inc. v. Nebraska,* 358 F.3d 528, 540 (8th Cir. 2004) (*Entergy III* ). Because Nebraska's petition for rehearing strongly implicates a fundamental concept of our Republic, i.e., sovereign immunity of one of the 50 States under the Eleventh Amendment, I believe the petition involves a "question of exceptional importance" worthy of consideration by our entire court. *See* Fed. R.App. P. 35(a)(2); *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) (noting important function of state sovereign immunity is to shield state treasuries); *Alden v. Maine,* 527 U.S. 706, 750–51, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (noting "[a] general federal power to authorize private suits for money damages would place unwarranted strain on the States' ability to govern in accordance with the will of their citizens.").

Because our panel in *Entergy III* may have misread two previous Entergy decisions and not addressed the Nebraska sovereign immunity issue, and because, on the merits of the Nebraska sovereign immunity issue, I doubt a state's waiver of immunity for specific performance also waives immunity from a damages award, I respectfully dissent from the denial of Nebraska's petition for rehearing en banc.

The first issue, as I see it, is whether this court has addressed and concluded that Nebraska waived sovereign immunity for claims of money damages when it entered into the Central Interstate Low–Level Radioactive Waste Compact (Compact). The *Entergy III* panel decision concludes an earlier panel resolved the issue of Nebraska's waiver of sovereign immunity to monetary damages. The panel in *Entergy III* notes *Entergy Ark., Inc. v. Nebraska,* 241 F.3d 979, 987 (8th Cir.2001) (*Entergy II* ), affirmed the district court's ruling that Nebraska's waiver of sovereign immunity extended to money damages. *Entergy III,* 358 F.3d at 554 n. 23. However, *Entergy II* does not appear to affirm any such district court ruling.

The *Entergy II* panel cited *Entergy Ark., Inc. v. Nebraska,* 210 F.3d 887, 897 (8th Cir.2000) (*Entergy I* ), observing that the "law of the case" was Nebraska waived Eleventh Amendment immunity to suits for damages. *Entergy II,* 241 F.3d at 987. However, the *Entergy I* court expressly and clearly never went that far. Instead, the *Entergy I* panel actually ruled that, by entering the Compact, "Nebraska [had] waived a *portion* of its sovereign immunity." *Entergy I,* 210 F.3d at 898 (emphasis added). *Entergy I* also noted the impor-

tance of injunctive relief was heightened "by the likely unavailability of money damages should the Commission prevail on the merits of its claims. Relief in the form of money damages could well be barred by Nebraska's sovereign immunity." *Id.* at 899.

As one reads *Entergy I, Entergy II,* and *Entergy III* together (which is no small undertaking), the exceptionally important issue of Nebraska's sovereign immunity as to an award of monetary damages appears unaddressed. Based on *Entergy I,* the "law of the case" seems only to be that "[r]elief in the form of money damages could well be barred by Nebraska's sovereign immunity."

I now turn to the question of whether Nebraska's waiver of immunity for specific performance simultaneously waived immunity from a money damages award. Neither the district court nor our court has cited any direct authority finding a state's waiver of immunity as to one type of remedy also waives that state's immunity as to all remedies, including money damages.

Nebraska "does not dispute that it could be compelled to perform its obligations expressed in the Compact." Petition for Rehearing En Banc at 2. The Compact in Article IV(m)(8) allows the Commission to "require all party states and other persons to perform their duties ... by an appropriate action." This language, specifically the words "perform" and "appropriate action," implicates equitable relief by specific performance or injunction. The Compact does not directly, or indirectly, provide that a party state agrees to a "suit for damages," nor does the Compact more broadly authorize "any action."

The Supreme Court insists a "clear declaration" of intent must exist to submit a state to federal court jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675–76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (citation omitted) (recognizing a state's intention to "sue and be sued" or to authorize suits "in any court of competent jurisdiction" does not waive sovereign immunity in federal court). The test for waiver of a state's immunity for federal court jurisdiction "is a stringent one." *Id.* at 675, 119 S.Ct. 2219 (citation omitted). The leap from a state's waiver of immunity for specific performance to a state's waiver of immunity for damages envisions a broad or liberal application of waiver, not a narrow or stringent one.[1]

The Supreme Court has suggested that a selective waiver of sovereign immunity should be respected. In *Beers v. Arkansas,* 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1858), the Supreme Court ruled Arkansas could selectively waive its sovereign immunity on the "terms and conditions" it prescribed.

> [T]he sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it.

*Id.*[2] *See also Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 307, 110

---

1. It is worth mentioning that the Supreme Court has endorsed bifurcating awards of money damages from those of injunctive relief in cases involving state sovereignty through the Court's *Ex parte Young* jurisprudence.

2. The Supreme Court has also implied a distinction between submitting fiscal and non-

S.Ct. 1868, 109 L.Ed.2d 264 (1990) (concluding venue provision in bi-state compact referring to United States judicial districts partially waived immunity, because the "provision expressly refers to and qualifies the more general consent to suit provision"), *aff'g Feeney v. Port Auth. Trans–Hudson Corp.,* 873 F.2d 628, 633 (2d Cir. 1989) (finding compact venue provision for suits was "an explicit waiver, albeit partial, of the Eleventh Amendment"). Our court has also recognized a state's ability to exercise a partial waiver of Eleventh Amendment immunity. *Hankins v. Finnel,* 964 F.2d 853, 856, 858 (8th Cir.1992) (ruling Missouri made limited waiver of immunity for a particular judgment).

We must remember that protection of state treasuries from "financial ruin" is the core of the Eleventh Amendment. *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (quotation omitted). The *Entergy III* decision certainly places the treasury of Nebraska in jeopardy.

The severity of the debt placed on Nebraska's treasury and the importance of a state's sovereign immunity in our federal system warrant further review in our court. The issue of sovereign immunity should be directly addressed by our court en banc.

---

fiscal state issues to the federal courts. *See Great N. Life Ins. Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) ("[W]hen we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of

---

the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."). *See also Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Read* with approval).