### The SPOKANE TRIBE OF INDIANS, Plaintiff–Appellee,

v.

**WASHINGTON STATE, the State of Washington; Booth Gardner, Governor of the State of Washington; Ken Eikenberry, Attorney General of the State of Washington; Franklin L. Miller, Deputy Director of the Washington State Gambling Commission, Defendants–Appellants.**

### The SPOKANE TRIBE OF INDIANS, Plaintiff–Appellant,

v.

**WASHINGTON STATE, the State of Washington; Booth Gardner, Governor of the State of Washington; Ken Eikenberry, Attorney General of the State of Washington; Franklin L. Miller, Deputy Director of the Washington State Gambling Commission, Defendants–Appellees.**

Nos. 92–35113, 92–35446.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided July 6, 1994.

---

Scott D. Crowell, Kirkland, WA, for plaintiff-appellee-cross-appellant.

Jonathan T. McCoy, Asst. Atty. Gen., Olympia, WA, for defendants-appellants-cross-appellees.

Howard L. Dickstein, Dickstein & Merin, and Thomas E. Gede, Sp. Asst. Atty. Gen., Sacramento, CA, for amici.

Hans Walker, Jr., Hobbs, Straus, Dean & Wilder, Washington, DC, for amicus curiae.

Before: GOODWIN, SCHROEDER, and PREGERSON, Circuit Judges.

Opinion by Judge SCHROEDER.

SCHROEDER, Circuit Judge:

This is a suit by the Spokane Tribe of Indians ("the Tribe") against the State of Washington to compel the state to negotiate in good faith for terms of a gaming compact as required by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–21 (Supp.1994). The dispositive issue in this appeal and cross-appeal is whether the state is immune from this suit under the Eleventh Amendment despite the fact that Congress, acting pursuant to its plenary constitutional power to regulate Indian affairs, clearly intended to authorize such suits. There is an existing circuit conflict on this issue. The Eighth Circuit has held that states are not immune, *Cheyenne River Sioux Tribe v. South Dakota*, 3 F.3d 273 (8th Cir.1993), while the Eleventh Circuit has held that they are. *Seminole Tribe of Florida v. Florida*, 11 F.3d 1016 (11th Cir.1994). The district court in this case dismissed the action against the State, but permitted it to go forward against individual state officers under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). We reverse, holding that the state is not immune from suit and that it is therefore unnecessary to proceed under *Ex Parte Young*.

I. *Statutory and Procedural Background*

Congress enacted the IGRA in 1988 in response to the 1987 Supreme Court decision in *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). The Ninth Circuit there had held that Public Law 280, 67 Stat. 588, as amended, 18 U.S.C. § 1162, 28 U.S.C. § 1360 (1982 ed. & Supp. III), did not authorize California to enforce its gaming laws on Indian Reservations. Affirming the decision of this court, the Supreme Court held that because California did not prohibit gambling altogether, the gaming laws were not within Public Law 280's grant of criminal jurisdiction. The case left Indian tribes whose reservations lay in states that permit gaming free of any state regulation.

In the new statute, Congress created three classes of gaming: "Class I" consists of social games for minimal prizes and traditional Indian games; "Class II" includes Bingo and similar games of chance such as pull tabs and lotto; "Class III" includes all games not included in Classes I or II. 25 U.S.C. §§ 2703(6)–(8). In order to conduct Class III gaming on Indian lands, the interested tribe must enter into a Tribal–State Compact governing gaming with the state in which the Indian lands are located. 25 U.S.C. § 2710(d)(1)(C). This case involves Class III gaming that must be conducted in conformance with a Tribal–State Compact.

According to the statutory scheme, an Indian tribe initiates the negotiation process by requesting the state in which the tribe's lands are located to enter into negotiations for a gaming compact. 25 U.S.C. § 2710(d)(3)(A). "Upon receiving such a request, the State shall negotiate with the Indian tribe in good faith to enter into such a compact." *Id.* If the state fails to negotiate in good faith, the statute confers jurisdiction on the United States district courts over "any cause of action initiated by an Indian tribe arising from a failure of a State to enter into negotiations with the Indian tribe for the purpose of entering into a Tribal–State Compact ... or to conduct such negotiations in good faith." § 2710(d)(7)(A)(i). The court may then order the state and the tribe to reach an agreement within 60 days. § 2710(7)(B)(iii). If the parties do not reach agreement within the 60 day period after the court's order, the court is directed to appoint a mediator. If mediation fails, the Secretary of Interior is authorized to impose regulations after consultation with the mediator. § 2710(7)(B)(iv)-(vii).

In this case, the Tribe filed a request on November 14, 1988 with Governor Gardner to begin the process of negotiating a compact. Formal negotiations began in August of 1989. Although the parties met several times during 1990 and 1991, Washington rejected both the draft compact prepared by the Tribe and a universal compact submitted by the Tribe together with other Indian tribes. Finally, on June 4, 1991, Washington demanded that the Tribe either acquiesce to state jurisdiction and state-imposed limitations on gaming or pursue remedies under the IGRA.

The Tribe filed its complaint in this case on June 6, 1991, naming as defendants the State of Washington, Governor Gardner, State Attorney General Eikenberry, and Deputy Director Miller. The complaint alleged that the state had violated the IGRA. The Tribe sought a declaratory judgment that the state had failed to negotiate in good faith or enter into negotiations, and an injunction directing the parties to conclude a compact within 60 days.

Defendants filed a motion to dismiss on behalf of both the state and individual defendants. The district court granted the defendants' motion as to the state but denied it as to the individual defendants, 790 F.Supp. 1057. The individual defendants appealed the court's denial of their claim of immunity, and the district court certified that portion of his order dismissing the Tribe's action against the state for appeal pursuant to Fed. R.Civ.P. 54(b).

## II. *Eleventh Amendment Immunity*

More than 100 years ago, the Supreme Court held in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) that the Eleventh Amendment of the United States Constitution bars suits by a citizen against the citizen's own state, as well as suits by citizens of another state.[1] In a series of more recent decisions, the Supreme Court has further refined the meaning of Eleventh Amendment immunity, holding that states may be subject to suit in federal court if they have consented to jurisdiction or if Congress has abrogated that immunity through the exercise of its constitutional power. *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) (state had waived Port Authority's immunity by specifically providing that the Port Authority could be sued with venue "laid within a . . . judicial district, established by . . . the United States"); *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (Congress may abrogate state sovereign immuni-

ty under its Commerce Clause power, and CERCLA specifically effects such abrogation); *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 477, 107 S.Ct. 2941, 2947–48, 97 L.Ed.2d 389 (1987) (Congress had not .clearly expressed intention to allow states to be sued under the Jones Act); *County of Oneida, N.Y. v. Oneida Indian Nation*, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (court did not have ancillary jurisdiction over question of state law, where state had not consented to suit in federal court as to that issue); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242–43, 105 S.Ct. 3142, 3147–48, 87 L.Ed.2d 171 (1985) (state had not waived immunity, and Congress had not abrogated it in the Rehabilitation Act); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Congress may abrogate states' immunity under the Fourteenth Amendment). In this case, the Tribe has never contended that Washington consented to federal jurisdiction. The issue for us therefore is whether the statute has abrogated the state's immunity.

## III. *Congressional Intent*

The Supreme Court has made clear that in order to overcome the Eleventh Amendment, congressional intent to abrogate immunity must be expressed unequivocally in the language of the statute. *See Port Auth. Trans–Hudson Corp.*, 495 U.S. at 305, 110 S.Ct. at 1872–73; *Atascadero State Hosp.*, 473 U.S. at 242–43, 105 S.Ct. at 3147–48; *Hale v. Arizona*, 993 F.2d 1387, 1391 (9th Cir.1993) (en banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993). A general authorization to sue is not sufficient. *Atascadero State Hosp.*, 473 U.S. at 246, 105 S.Ct. at 3149–50.

Our discussion of congressional intent need not be lengthy. Every federal court that has considered the issue has concluded that the IGRA's language reveals a clear intent to abrogate the states' Eleventh Amendment immunity. *E.g., Cheyenne River*, 3 F.3d 273; *Seminole Tribes*, 11 F.3d

---

1. The Eleventh Amendment provides:
   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one

of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

1016. Section 2710(d) authorizes suit in federal court for injunctive relief. It further provides that once a tribe has introduced evidence that a tribal state compact has not been entered into and that the state has failed to respond to the tribe's request for negotiations or did not respond in good faith, the burden of proof is on the state to prove that it negotiated in good faith. § 2710(d)(7)(B)(ii). Congress' intent could not be much clearer. As one court stated:

> The tribe's suit and the federal court's jurisdiction are triggered under [section 2710(d)(7)(A)(i) ] by the particular state's failure to negotiate in good faith. The state is the only possible defendant to such a suit, and it is the only other party to the compact negotiations. Congress fully contemplated and expressed its desire to give the tribes a federal forum by which they could compel the states to negotiate fairly with them. This is not just a permissible inference; it is the only reasonable inference.... Short of mentioning the Eleventh Amendment or sovereign immunity, a clearer statement of the intent to abrogate is difficult to envision.

*Kickapoo Tribe v. Kansas,* 818 F.Supp. 1423, 1427 (D.Kan.1993).

The more difficult issue we must decide is therefore whether Congress had the power to abrogate the states' immunity from suits by Indian tribes when it enacted the IGRA to regulate tribal gaming ventures.

### IV. *Congressional Power and the Indian Commerce Clause*

■ The Supreme Court's recent decisions tell us that Congress has the authority to abrogate Eleventh Amendment immunity when it is exercising a constitutional provision that gives Congress plenary power over matters affecting the states. Such authority clearly exists with respect to § 5 of the Fourteenth Amendment. *See, e.g., Fitzpatrick,* 427 U.S. at 456, 96 S.Ct. at 2671 (Eleventh Amendment is "necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment"). The Court has also held that Congress possesses the power of abrogation under the Interstate Commerce

Clause. *Union Gas,* 491 U.S. 1, 109 S.Ct. 2273.

■ The Supreme Court has never specifically addressed the intersection of federal power over tribes and state sovereign immunity that the IGRA represents. The Court in *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), held that the Eleventh Amendment generally bars suits against a state by an Indian tribe. *Id.* at 779–84, 111 S.Ct. at 2581–83. While acknowledging that the states waived their immunity to suits by other states when they adopted the Constitution, the Court rejected the argument that Indian tribes could be treated as states for this purpose. The Court reasoned that the states' waiver vis a vis other states was founded upon a "mutuality of ... concession," that was lacking between the states and Indian tribes. *Id.* But this holding, that a general waiver of immunity from suits against tribes cannot be inferred from the Constitution itself, does not address the question of whether Congress may abrogate that immunity under the Indian Commerce Clause when it acts with the clarity of purpose that it did in the IGRA.

The Court's holding in *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 192, 109 S.Ct. 1698, 1716, 104 L.Ed.2d 209 (1989), upon which the district court relied, is similarly inapplicable. The Court there held only that a state could tax non-Indian oil and gas interests located on Indian lands and subject to tribal taxes without impermissibly burdening commerce "with" Indian tribes, even though such double taxation might impermissibly burden commerce "among" states if imposed on activity within another state. In reaching this conclusion, the Court noted that Interstate Commerce Clause doctrine cannot always readily be applied to cases involving the Indian Commerce Clause. This statement, however, does not speak to the scope of congressional power under either the Interstate Commerce Clause or the Indian Commerce Clause.

The Supreme Court case more closely related to our situation is *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). The *Union Gas* Court

held that Congress has the power to abrogate the states' immunity from suit under the Commerce Clause. The plurality opinion first noted that the states had necessarily "surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce," including any aspect of that sovereignty which would stand in the way of this congressional power. *Id.* at 14, 109 S.Ct. at 2281 (quoting *Parden v. Terminal Railway*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), *overruled on other grounds by Welch v. Texas Dep't of Highways & Public Transp.*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987)). Next, the opinion noted that in *Fitzpatrick v. Bitzer*, the Court had held that Congress could abrogate the states' immunity under the Fourteenth Amendment for reasons that were precisely applicable to the Commerce Clause:

> "When Congress acts pursuant to § 5, not only is it exercising legislative authority that is plenary within the terms of the constitutional grant, it is exercising that authority under one section of a constitutional Amendment whose other sections by their own terms embody limitations on state authority."

> .   .   .   .   .

> Each of these points is as applicable to the Commerce Clause as it is to the Fourteenth Amendment. Like the Fourteenth Amendment, the Commerce Clause with one hand gives power to Congress while, with the other, it takes power away from the States.... The important point, ... is that the provision both expands federal power and contracts state power; that is the meaning, in fact, of a "plenary" grant of authority.

*Id.* 491 U.S. at 16–17, 109 S.Ct. at 2282–83 (quoting *Fitzpatrick*, 427 U.S. at 456, 96 S.Ct. at 2671). Although Justice Brennan's opinion in *Union Gas* was a plurality opinion, a fifth Justice, Justice White, agreed that states are not immune from suit under statutes enacted pursuant to the Interstate Commerce Clause, provided the congressional intent is clear. 491 U.S. at 57, 109 S.Ct. at 2296 (White, J., concurring in part).

The district court in this case concluded that because "a significant difference exists" between congressional power under the Indian Commerce Clause and the Interstate Commerce Clause, there was "no basis" for holding that Congress could abrogate state sovereign immunity under the Indian Commerce Clause. We cannot agree with the district court that the differences between the Indian and the Interstate Commerce Clauses support state immunity from tribal suit where, as here, Congress has authorized such suits. Congress' power over both Indian and interstate commerce is set forth in Article I, § 8:

> The Congress shall have power,

> .   .   .   .   .

> 3. To regulate commerce with foreign nations, and among the several states, and with the Indian tribes[.]

Moreover, the analysis developed by the Supreme Court in both *Union Gas* and *Fitzpatrick v. Bitzer* is equally applicable to the Indian Commerce Clause. In fact, the *Union Gas* plurality framed its opinion in terms of the Commerce Clause as a whole, and did not limit it to the Interstate Commerce Clause.

In this case, as in *Union Gas* and *Fitzpatrick*, Congress is acting under one of its plenary powers. As the Supreme Court explained in *Cotton Petroleum*, the central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs. In 1832, the Supreme Court pronounced that the Indian Commerce Clause, together with Congress' constitutional power to conclude treaties with Indian tribes, provide Congress with "all that is required" for complete control over Indian affairs. *Worcester v. Georgia*, 31 U.S. 515, 558, 8 L.Ed. 483 (1832).

This broad grant of power to Congress over Indian affairs necessarily limits the power of the states. Generally, unless Congress has authorized a state to apply its laws to Indian activities on a reservation, the state has no authority to do so. *Antoine v. Washington*, 420 U.S. 194, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975); *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93

S.Ct. 1257, 36 L.Ed.2d 129 (1973); *Williams v. Lee,* 358 U.S. 217 (1959). The Supreme Court stated in *McClanahan* that " '[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the nation's history.' " 411 U.S. at 168, 93 S.Ct. at 1260 (quoting *Rice v. Olson,* 324 U.S. 786, 789, 65 S.Ct. 989, 991, 89 L.Ed. 1367 (1945)). Thus, "absent congressional action, a tribe retains its inherent right of self government and no state may impose its laws on the reservation." Stephen Pevar, *Rights of Indians and Tribes* 79 (1992). In a recent reaffirmation of this principle, the Supreme Court in 1991 stated that "Indian tribes are 'domestic dependent nations' which exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).

■ Congressional power pursuant to the Indian Commerce Clause, then, cannot be less than its authority under the Interstate Commerce Clause. We therefore agree with District Judge Marcus when he said that:

> congressional power over both interstate and Indian commerce derives from the same clause in the Constitution; and we are hard pressed to conclude that the congressional authority to abrogate the States' immunity in the area of interstate commerce is greater than in Indian commerce.... [W]e conclude that, based on its paramount and plenary authority over Indian affairs, Congress' power to act pursuant to the Indian Commerce Clause is at least as great, if not greater, than its powers under the Interstate Commerce Clause.

*Seminole Tribe v. Florida,* 801 F.Supp. 655, 662 (S.D.Fla.1992), *rev'd,* 11 F.3d 1016 (11th Cir.1994). Reversing the district court in that case, the Eleventh Circuit questioned the continuing vitality of the *Union Gas* decision in light of changing Supreme Court membership and the lack of majority opinion. The case, however, remains binding authority upon us. Moreover, even if the Supreme Court were to overrule *Union Gas* and hold that Congress' power to regulate interstate commerce does not permit Congress to abrogate sovereign immunity, Congress' broader authority over tribal affairs would remain.

The IGRA was passed to fill a void in Indian gaming regulation that arose from the states' dependence on Congress for any authority to regulate tribal affairs. *See California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). In grappling with sensitive issues following the state of California's defeat in *Cabazon Band,* Congress tried to fashion a plan that would enable the states to have a voice in how tribal gaming should operate and to enforce to some degree the states' own laws. The states' immunity from suits under the Eleventh Amendment should not frustrate that goal. Indeed, principles of state sovereignty are singularly out of place in such a scheme, where the federal government is tailoring a limited grant of power to the states. In this case, sovereign immunity would undermine rather than promote the assertion of state interests.

The Eleventh Circuit was concerned by the regulatory void that it might leave by invalidating the IGRA's provisions for federal judicial enforcement. Those concerns illustrate the problem caused when state sovereignty is injected into the federal scheme. The Eleventh Circuit reasoned that a void was not necessary because the provisions of the statute authorizing the Secretary of Interior to impose regulations would come into effect once a state asserted immunity from suit. When that occurred the Secretary of the Interior would, in the Eleventh Circuit's view, remain authorized to impose regulations for Class III gaming. *Seminole Tribe,* 11 F.3d at 1029. In our view, however, such a result would pervert the congressional plan. This is because the Secretary of the Interior under the statute is to act only as a matter of last resort, and then only after consulting with the court appointed mediator who has become familiar with the positions and interests of both the tribes and the states in court directed negotiations. 25 U.S.C. § 2710(d)(7)(B)(iv)–(vii). The Eleventh Circuit's solution would turn the Secretary of the Interior into a federal czar, contrary to the congressional aim of state participation.

■ For the foregoing reasons, we conclude that the State of Washington is not immune from this suit under the IGRA to enforce the clear congressional mandate that states negotiate in good faith with tribes to reach tribal gaming compacts. The judgment of the district court dismissing the action against the state is REVERSED. The order of the district court permitting the case to go forward against the individual defendants under the doctrine of *Ex Parte Young* is VACATED because it is no longer necessary. *See Kentucky v. Graham,* 473 U.S. 159, 167 & n. 14, 105 S.Ct. 3099, 3106 & n. 14, 87 L.Ed.2d 114 (1985) (any immunity of state officers acting in their official capacities depends upon state immunity). Defendants contend that regardless of immunity, the case should be dismissed as to the individual defendants because the IGRA does not authorize suit against individual officers. The district court may consider this argument on remand.

REVERSED AND REMANDED.