Karen M. USSERY

v.

**STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF HEALTH AND HOSPITALS, Pinecrest Developmental Center, and Rodney Richmond.**

**Civil Action No. 95–2064.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

April 25, 1997.

David E. Stanley, Baton Rouge, LA, for Plaintiff.

David Glen Sanders, Louisiana Attorney General's Office, Baton Rouge, LA, Kimmie B. Leyser, Louisiana Dept. of Justice, Alexandria, LA, for Defendants.

## RULING

LITTLE, Chief Judge.

The court has considered defendants' motion for summary judgment and the plaintiff's opposition. For the following reasons, the plaintiff's claims are DISMISSED IN PART. We DENY defendants' motion for summary judgment as to the remaining claims.

### I. BACKGROUND

Plaintiff, Karen M. Ussery ("Ussery"), filed suit in this court on 17 November 1995 against the State of Louisiana through the Department of Health and Hospitals, Pinecrest Developmental Center ("the state"), and against Rodney Richmond ("Richmond"). Plaintiff alleges that the state, as her employer, violated Title VII of the Civil Rights Act of 1964; the Equal Pay Act; and state sex discrimination statutes, sections 23:1006 et seq. and 51:2234 et seq. of the Louisiana Revised Statutes. Plaintiff also asserts that both the state and Richmond, her supervisor, intentionally subjected her to mental and emotional distress, in violation of articles 2315, 2317, and 2320 of the Louisiana Civil Code.

The basic facts are undisputed. The State of Louisiana through the Department of Health and Hospitals, Pinecrest Developmental Center is the plaintiff's employer for purposes of Title VII, the Equal Pay Act, and the relevant state law provisions. Ussery has worked for the state since 24 July 1991 and has earned satisfactory performance ratings throughout her employment. Prior to filing this suit, plaintiff filed a complaint with the Equal Employment Opportunity Commission within 180 days of the alleged discriminatory acts and received a right to sue letter on 21 August 1995. Plaintiff timely filed this action.

In their motion for summary judgment,[1] defendants raise the following sovereign im-

---

1. Local rules of the Louisiana Federal Courts require motions for summary judgment to be accompanied by a separate statement of uncontested facts. U.L.L.R. 2.09. Rule 11(a) of the Federal Rules of Civil Procedure further requires that "an unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney." Generally, the clerk of court notices such omissions and informs the attorney of the proce-

munity arguments: (1) Title VII does not contain the unmistakably clear language necessary to abrogate state sovereign immunity, (2) the Equal Pay Act was not passed pursuant to a constitutional power that may abrogate state sovereign immunity, and (3) sovereign immunity bars all of plaintiff's state claims from being brought against a state in federal court. Defendants also contend that the plaintiff neither states a retaliation claim under Title VII nor a violation of the Equal Pay Act. Finally, defendants argue that the claim [2] against defendant Richmond is necessarily in the nature of a suit against him in his official capacity, and, therefore, is barred by sovereign immunity.

## II. LAW & ANALYSIS

We begin our analysis, as we must, with the jurisdictional issues raised in the sovereign immunity arguments.

### A. Subject Matter Jurisdiction

 The Eleventh Amendment [3] erects a jurisdictional bar against individuals bringing suit against a state in federal court. *Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662, 681 (1974) (citing *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 466–67, 65 S.Ct. 347, 351–52, 89 L.Ed. 389 (1945)). Sovereign immunity under the Eleventh Amendment is not absolute, however. A state may consent to suit in federal court, and Congress may abrogate Eleventh Amendment protections. *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868,

1872, 109 L.Ed.2d 264, 272 (1990) (citations omitted).

Here, the parties agree that Louisiana has not waived its sovereign immunity with regard to any of the causes of action asserted in this case. We direct our focus, therefore, to the issue of whether Congress has abrogated Louisiana's Eleventh Amendment right to sovereign immunity. That is, we must find that Congress has unequivocally expressed its intent to abrogate, *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171, 179 (1985) (Powell, J.), and that Congress has acted pursuant to a constitutional provision that empowers Congress to abrogate state immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. ——, ——, 116 S.Ct. 1114, 1124–25, 134 L.Ed.2d 252, 268 (1996) (Rehnquist, C.J.) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452–456, 96 S.Ct. 2666, 2669–2671, 49 L.Ed.2d 614, 619–622 (1976) (Rehnquist, J.)).

### 1. Title VII Retaliation Claims

It is well settled that, through the 1972 amendments to Title VII of the Civil Rights Act of 1964, Congress "authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to unlawful employment discrimination" in violation of the Act. *Fitzpatrick*, 427 U.S. at 447–48, 96 S.Ct. at 2667–68, 49 L.Ed.2d at 617 (1976).

Notwithstanding this clear dictate, [4] Louisiana argues that *Fitzpatrick* no longer con-

---

dural defect. Here, the attorney for the defendants failed to sign the statement of uncontested facts and the clerk of court failed to detect the omission. The court recognizes, however, that the statement was filed contemporaneously with the signed motion for summary judgment and that both documents were accompanied by signed certificates of service. We will consider the substance of the unsigned statement, but direct the defendants to correct their error promptly.

2. In her opposition brief, plaintiff clarifies that the only claim she asserts against Richmond is a supplemental state claim for intentional infliction of emotional distress. Accordingly, we will consider this claim only.

3. The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 U.S. Const. amend. XI.

4. Defendants suggest that this is mere dicta, arguing that "nowhere does the Court in *Fitzpatrick* address the issue of exactly how Congress is to exercise its power to abrogate the States' Eleventh Amendment immunity." (Def.'s Mem. Supp. Summ. J. at 5.) While creative, this argument lacks legal merit. The Supreme Court expressly found that the statutory language of Title VII sufficiently articulated Congress' intent to abrogate. *Fitzpatrick v. Bitzer*, 427 U.S. 445,

trols the issue of whether Title VII contains an unmistakable expression of congressional intent to abrogate state immunity. Defendants posit that the Supreme Court's later decision in *Atascadero* crafted new rules for interpreting congressional acts attempting to overcome Eleventh Amendment immunity. We disagree.

■ The state correctly recites the standard, articulated in *Atascadero*, for determining congressional intent to abrogate the Eleventh Amendment. Congress must use "unmistakable language in the statute itself." *Atascadero*, 473 U.S. at 243, 105 S.Ct. at 3148, 87 L.Ed.2d at 180. The full sentence from that decision, from which the defendants quote only a part, states:

> For these reasons, we hold—*consistent with Quern, Edelman, and Pennhurst II*—that Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself.

*Id.* (emphasis added). Since the Court expressly relied upon *Quern v. Jordan*,[5] *Edelman v. Jordan*[6], and *Pennhurst State School & Hosp. v. Halderman* ("*Pennhurst II*"),[7] a closer examination of these cases is called for. We proceed chronologically.

The Court in *Edelman* held that a state's mere participation in the federal-state program of Aid to the Aged, Blind, and Disabled does not waive Eleventh Amendment immunity. *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360–61, 39 L.Ed.2d at 678. The Court reasoned that it would "find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reason-

able construction.'" *Id.* (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742, 751 (1909)) (finding that South Carolina failed to waive sovereign immunity in certain state dispensary statutes and the 1907 act winding-up the state liquor business).

In the "sequel to *Edelman*," the Court resolved the lingering issue of whether 42 U.S.C. § 1983 abrogated state sovereign immunity. *Quern*, 440 U.S. at 333, 99 S.Ct. at 1141, 59 L.Ed.2d at 362. Rejecting the abrogation argument, the Court found that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the states," nor does it have a legislative history suggestive of such an intent. *Id.* at 345, 99 S.Ct. at 1147, 59 L.Ed.2d at 369.

Finally, we look to *Pennhurst II*, a case decided just one year before *Atascadero*, which considered state sovereign immunity where a federal court ordered state officials to conform to state law. Invoking *Edelman* and *Quern*, the Court in *Pennhurst II* recited the rule that Eleventh Amendment immunity requires "an unequivocal expression." *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907, 79 L.Ed.2d at 77. Either a state must unequivocally express its consent to suit in federal court or Congress must unequivocally declare its intent to abrogate the states' immunity. *Id.*

All three of these cases echo the same standard, a standard that the defendants here describe as new. In each case, the Supreme Court searched the relevant statute for explicit textual evidence of intent to waive or to abrogate state sovereign immunity.

452, 96 S.Ct. 2666, 2670, 49 L.Ed.2d 614, 619 (1976) ("[T]he threshold fact of congressional authorization to sue the State as employer is clearly present.") (internal quotations and citations omitted). Although the Court in *Fitzpatrick* focused primarily on the constitutional issue of Congress' power to abrogate, its finding regarding congressional intent was a necessary prerequisite and cannot, therefore, be classified as dicta. *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 346, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936). *See also Seminole Tribe* 517 U.S. ——, —— n. 15, 116 S.Ct. 1114, 1131 n. 15, 134 L.Ed.2d 252, 276 n. 15 (1996) ("[B]oth the doctrine requiring avoidance of constitutional ques-

tions, and principles of federalism, require us always to apply the clear statement rule before we consider the constitutional question whether Congress has the power to abrogate.") Thus, we consider here only defendants' argument that *Fitzpatrick* has been overruled or limited.

**5.** 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (Rehnquist, J.)

**6.** 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (Rehnquist, J.)

**7.** 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Powell, J.)

Based on this clear reading of the cases, we cannot find that *Atascadero* represented a departure from *Quern, Edelman,* or *Pennhurst II.* We buttress this interpretation by observing the authorship of the relevant opinions. In regards to *Quern, Fitzpatrick, Edelman, Pennhurst II, Atascadero,* and *Seminole Tribe,* either Chief Justice Rehnquist or Justice Powell wrote the opinion of the Court and both Justices joined the majority in each of these sharply divided cases.[8] Thus, we must refuse the invitation to overturn the Supreme Court's 1976. ruling that Congress clearly expressed its intent in Title VII to abrogate state sovereign immunity. *Accord Pegues v. Mississippi State Employment Serv.,* 899 F.2d 1449, 1453 (5th Cir. 1990).

The state concedes that Title VII was enacted pursuant to Section 5 of the Fourteenth Amendment, a valid constitutional basis for state abrogation of sovereign immunity. *Fitzpatrick,* 427 U.S. at 453–56, 96 S.Ct. at 2670–71, 49 L.Ed.2d at 620–622.

■ Finding that Title VII contains the requisite clear statement of congressional intent to abrogate and that Congress has the power to abrogate, we observe no merit in the defendants' argument that they are entitled to immunity from plaintiff's Title VII claims.

### 2. Equal Pay Act Claims

The state does not dispute the issue of whether the Equal Pay Act sufficiently states Congress' intent to abrogate Eleventh Amendment immunity. Rather, defendants

argue that the Act was promulgated pursuant to the Commerce Clause and, therefore, cannot be invoked against a state in federal court.

Although the Supreme Court's recent decision in *Seminole Tribe* held that Congress may not abrogate states' Eleventh Amendment immunity pursuant to the Indian Commerce Clause or the Interstate Commerce Clause, the Court explicitly reaffirmed Congress' power to abrogate sovereign immunity pursuant to Section 5 of the Fourteenth Amendment. *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1124–25, 134 L.Ed.2d at 268 (citing *Fitzpatrick,* 427 U.S. at 452–456, 96 S.Ct. at 2669–2671, 49 L.Ed.2d at 619–622). Thus, we must determine the constitutional authorization behind Congress' application of the Equal Pay Act to the states.

■ In two cases, both decided in 1979, the Fifth Circuit considered and rejected a state's challenge to the Equal Pay Act provisions of the Fair Labor Standards Act.[9] Neither case, however, determined whether the Equal Pay Act was an exercise of Congress' power under Section 5 of the Fourteenth Amendment.[10] In the first case, the court held

> that the extension of the Equal Pay Act to the states and their political subdivisions is a valid exercise of Congress' power under the [C]ommerce [C]lause and that the Tenth Amendment does not bar the exercise of that power.

*Pearce v. Wichita County,* 590 F.2d 128, 132 (5th Cir.1979). The court acknowledged that

---

**8.** *Edelman, Pennhurst II,* and *Atascadero* were all 5–4 opinions. In both *Quern* and *Fitzpatrick,* Rehnquist wrote for seven members of the Court, with two Justices submitting separate concurrences.

**9.** The minimum wage provisions of the Fair Labor Standards Act may not be applied to the states. *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). The Fifth Circuit held, however, that the severability clause served to differentiate the wage provisions from the equal pay provisions. *Pearce v. Wichita County,* 590 F.2d 128, 131–32 (5th Cir.1979). In particular, the circuit court found that

> [t]he presumption of divisibility created by the severability clause is especially proper with regard to the Equal Pay Act, because it has its

own legislative history, was added to the Fair Labor Standards Act primarily for administrative convenience, and effectuates policies different from those served by the minimum wage law.

*Id. at* 132 (internal citations omitted).

**10.** At the time that the Fifth Circuit decided *Pearce* at least two circuits had upheld the application of the Equal Pay Act to the states pursuant to the Fourteenth Amendment. *Pearce v. Wichita County,* 590 F.2d 128, 132 n. 5 (citing *Usery v. Charleston Cty. School Dist.,* 558 F.2d 1169 (4th Cir.1977); *Usery v. Allegheny Cty. Institution Dist.,* 544 F.2d 148 (3d Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977)).

the Commerce Clause may not be the sole source of congressional power for the Equal Pay Act, but simply "f[ou]nd it unnecessary to consider other constitutional sources." *Id.* at n. 5. In the second case, the Fifth Circuit upheld the ability of the United States Secretary of Labor to recover unpaid wages against a state employer. *Marshall v. A & M Consol. Indep. School Dist.,* 605 F.2d 186, 189–190 (5th Cir.1979). Since the suit was brought by the United States, an entity not subject to the Eleventh Amendment, the court did not reach the question of whether the Equal Pay Act could be justified as an exercise of congressional power pursuant to the Fourteenth Amendment. *Id.* at 190 n. 3 (citing *Pearce,* 590 F.2d at 132 n. 5). Clearly, the Fifth Circuit has left open the question of whether the Fourteenth Amendment provides an alternate basis of support for the Equal Pay Act. We turn, therefore, to the statute itself.

In 1974, Congress amended the Fair Labor Standards Act to extend the Equal Pay Act to the states, but failed to specify the constitutional power authorizing the amendment.[11] Fair Labor Standards Act Amendments of 1974, Pub.L. No. 93–259 § 6, 88 Stat. 55, 58–62 (codified at 29 U.S.C. § 206(d)). The lack of clarity in this regard need not hamper judicial review of the constitutionality of congressional action.

"The question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144, 68 S.Ct. 421, 424, 92 L.Ed. 596, 602 (1948); *Fullilove v. Klutznick,* 448 U.S. 448, 473, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902, 921 (1980) (upholding congressional legislation as a valid exercise of the Enforcement Clause even though the statute is unclear as to the source of power upon which Congress intended to rely). Federalism considerations dictate that a court "should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." *Pennhurst State School v. Halderman,* 451 U.S. 1, 16, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694, 706 (1981) (*"Pennhurst I "*). Although a court must identify support for the exercise of Fourteenth Amendment power, "[t]hat does not mean, however, that Congress need anywhere recite the words 'section 5' or 'Fourteenth Amendment' or 'equal protection.' " *EEOC v. Wyoming,* 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18, 33 n. 18 (1983) (citations omitted).

In the absence of controlling law from the Fifth Circuit, we turn to our sister circuits for guidance in determining whether Congress intended to exercise its Fourteenth Amendment powers when it extended the Equal Pay Act to the states. Since the Supreme Court's decision in *Seminole Tribe,* the Sixth Circuit has reviewed this particular issue and delivered a thoroughly well-reasoned ruling. *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833 (6th Cir.1997). Upholding *Marshall v. Owensboro–Daviess Cty. Hosp.,* 581 F.2d 116 (6th Cir.1978), the Sixth Circuit in *Timmer* held that the Fourteenth Amendment authorized the Equal Pay Act. *Timmer,* 104 F.3d at 842–43. The Sixth Circuit recognized that the substance of the Equal Pay Act places it within the scope of the Fourteenth Amendment.

> [T]he Equal Pay Act is an anti-discrimination measure and as such … it should be viewed as an exercise of Congress' power to adopt legislation enforcing the Fourteenth Amendment's guarantees of equal protection of the law.

*Id.* at 839 n. 8 (citations omitted). The court also found that Congress did not expressly state its intent to act pursuant to any particular constitutional provision, but that it clearly intended to hold states liable. Finally, the court in *Timmer* expressly found that its ruling did not violate the dictate in *Penn-*

---

11. The original version of the Equal Pay Act was enacted pursuant to the Commerce Clause. *See Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 837 (6th Cir.1997) ("[The Equal Pay Act of 1963] was based on a congressional finding that sex-based wage differentials have a substantial adverse impact on interstate commerce, and it accordingly required that all person performing equal work must receive equal pay, unless the differential is justified by a consideration other than sex.").

*hurst II* to "not quickly attribute" legislative action to the Fourteenth Amendment.

■■■■ The plain logic employed by the Sixth Circuit compels our concurrence. We find that the 1974 amendment to the Equal Pay Act, rendering the provisions enforceable against the states, was enacted pursuant to Section 5 of the Fourteenth Amendment. Since we have already found that Congress expressed its intent to abrogate state sovereign immunity with sufficiently clear language, we reject the defendants' sovereign immunity defense to plaintiff's Equal Pay Act claims.

### 3. State Law Claims

We recall that the plaintiff brings three separate state causes of action against the state: (1) employment discrimination in violation of § 23:1006 of the Louisiana Revised Statutes; (2) retaliation in violation of § 51:2231 of the Louisiana Revised Statutes; and (3) intentional infliction of emotion distress in violation of articles 2315, 2317, and 2320 of the Louisiana Civil Code. This last claim is also brought against defendant Richmond. Defendants assert that sovereign immunity bars pursuit of these claims in federal court. Plaintiff fails to rebut this argument.

■■■■ It is well established that the state is immune to state claims in federal court. *Pennhurst II,* 465 U.S. at 106, 104 S.Ct. at 911, 79 L.Ed.2d at 82. Although plaintiff did not specify whether she seeks to hold defendant Richmond liable individually or in his official capacity,[12] state claims against him in his official capacity are barred from federal court. *Id.* at 121, 104 S.Ct. at 919, 79 L.Ed.2d at 92; *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301, 309 (1991); *Hughes v. Savell,* 902 F.2d 376, 378 (5th Cir.1990). Accordingly, we are without jurisdiction over the state claims against the state and against Richmond in his official capacity and they must be dismissed.

■■■■ To the extent that plaintiff alleges a separate tort claim against Richmond in his individual capacity, it is supplemental to the other claims. Because we find that it presents "a novel or complex issue of state law," 28 U.S.C. § 1367(c)(1), we decline to exercise supplemental jurisdiction over plaintiff's claim against Richmond in his individual capacity. Thus, this claim is also dismissed.

### 4. Summary

The court finds that it may exercise jurisdiction over plaintiff's Title VII and Equal Pay Act claims against the state. We are without jurisdiction over the state claims against the state and against Richmond in his official capacity. Consequently, these claims are dismissed without prejudice. The supplemental state claim against Richmond in his individual capacity is dismissed without prejudice.

### B. Summary Judgment

Finding that we have jurisdiction over plaintiff's Title VII and Equal Pay Act claims against the state, we turn to defendants' motion for summary judgment.

### 1. Standard of Review

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265

---

12. Both in her complaint and in her opposition to defendants' motion for summary judgment, plaintiff failed to state whether the claim was brought against Richmond in his individual or official capacity.

(1986), the nonmovant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbably inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *S.E.C. v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993).

### 2. Title VII Retaliation Claim

■■■■ To establish her claim of retaliation in violation of Title VII, plaintiff must establish (1) that she engaged in a protected activity; (2) that she was subjected to an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 507 (5th Cir.1994). To be actionable, the adverse employment action must be an ultimate employment decisions. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir.1995); *see also Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.) (en banc) (finding that decisions regarding hiring, granting leave, discharging, promoting, and compensating constitute ultimate employment decisions), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981).

■■■ In this case, defendants contend that the plaintiff did not suffer an adverse employment action. Defendants argue that the plaintiff has only alleged a reprimand, an action that does not rise to the level of a Title VII violation. Defendants correctly report that the Fifth Circuit recently held that verbal threats and reprimands are not actionable. *Mattern v. Eastman Kodak Co.,* 104 F.3d 702 (5th Cir.1997). One of plaintiff's allegations, however, is that she was required to resign and be rehired on probationary status in order to qualify for a certain pay status. We need not comment on whether this allegation amounts to a Title VII violation, but the alleged changes in employment status certainly constitute an ultimate employment action. Since we reject the defendants' only challenge to the Title VII claim, we must deny their motion for summary judgment as to that claim.

### 3. Equal Pay Act Claims

■■■ Plaintiff alleges a violation of the Equal Pay Act, which bars discrimination in pay

> between employees on the basis of sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C. § 206(d)(1). To establish a prima facie case, the plaintiff must demonstrate "that the employer paid different wages to an employee of the opposite sex for substantially equal work." *Timmer,* 104 F.3d at 843 (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974)); *accord Chance v. Rice University,* 984 F.2d 151, 153 (5th Cir.1993).

Here, the dispute centers on whether different wages were paid; the parties do not contest that the employees in question engaged in equal work. Specifically, plaintiff complains of two employment practices related to her attainment of a master's degree. One, plaintiff contends that her graduation date was used as the effective date for her promotion, but that the employer utilized an earlier date (the date a college certified that all degree requirements had been satisfied) to calculate the effective date of the promotions of similarly situated men. Two, plaintiff argues that she was required to resign and be rehired on probationary status in order to advance to a certain pay level, but that male employees were not subject to this requirement.

■■■ In addressing the promotion date issue, the defendants present charts indicating that all employees were paid the same amount "when they earned their masters." (Def.'s Mem. Supp. Summ. J. at 24.) This argument is irrelevant. The plaintiff argues that pay differences between male and female employees arose from differences in how the employer calculated when an employee earned the degree. In response to the alleged resignation requirement, the defendants attempt to differentiate the plaintiff as being "on permanent status." We find, however, that the defense fails to address the

plaintiff's claim that at least one male employee, who was on permanent status, was not subject to the resignation requirement.

■ Plaintiff does not allege an ongoing pay disparity, but does, nevertheless, allege a violation of the Equal Pay Act. In failing to address the substance of plaintiff's complaint, we find that defendants failed to demonstrate that no genuine issues of material fact exist. We accordingly deny defendants' motion for summary judgment as to the Equal Pay Act claims.

### 4. Summary

The court finds that the defendants failed to demonstrate that no genuine issues of material fact exist as to plaintiff's Title VII and Equal Pay Act claims. We deny defendants' motion for summary judgment.

### III. CONCLUSION

The court lacks subject matter jurisdiction over the state claims against the state; these claims are DISMISSED WITHOUT PREJUDICE.

Similarly, the court lacks jurisdiction over the state claim against Richmond in his official capacity, and we elect not to exercise supplemental jurisdiction over the state claim against Richmond in his individual capacity. All claims against Richmond are, therefore, DISMISSED WITHOUT PREJUDICE.

We find federal jurisdiction over plaintiff's Title VII and Equal Pay Act claims against the state, rejecting the sovereign immunity defense. The defendants failed to demonstrate that no genuine issues of material fact exist as to plaintiff's Title VII and Equal Pay Act claims. We accordingly DENY defendants' motion for summary judgment as to these remaining causes of action.