In re MAGNOLIA VENTURE CAPITAL
CORPORATION.

No. 3:97CV513LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 20, 1997.

Patrick H. Scanlon, Scanlon, Sessums, Parker & Dallas, Harry Jonas Rosenthal, Barney E. Eaton, III, Jackson, MS, for Plaintiff or Petitioner.

Kenneth A. Rutherford, Alston & Jones, Jackson, MS, for Prudential Securities, Inc.

James C. Martin, James A. Peden, Jr., Stennett, Wilkinson & Ward, Jackson, MS, for Mississippi Department of Economic and Community Development.

Ronald McAlpin, Jackson, MS, Pro se.

### MEMORANDUM OPINION AND ORDER

LEE, District Judge.

In this adversary proceeding, the Mississippi Department of Economic and Community Development (the Department) initially moved the bankruptcy court to dismiss the case as barred by the Eleventh Amendment to the United States Constitution, and the debtor-in-possession, Magnolia Venture Capital Corporation (Magnolia), responded in opposition to the motion. Thereafter, the Department moved to withdraw the reference to the bankruptcy court in order that this court, rather than the bankruptcy court, could consider and resolve the jurisdictional issue raised by the Department's attempted invocation of its Eleventh Amendment immunity. By memorandum opinion and order dated August 28, 1997, this court granted the Department's motion. The court has since provided the parties full opportunity to brief the issues presented and the court, having now carefully considered each of the parties' various arguments for and against dismissal, concludes, for reasons which follow, that the Department's motion should be denied.

The facts leading to the present litigation are as follows. In 1994, the Mississippi Legislature enacted the Mississippi Venture Capital Act of 1994, codified at Miss.Code Ann. § 57–77–1 *et seq.*, for the avowed purpose of "increasing the rate of capital formation; stimulating new growth-oriented business formations; creating new jobs for Mississippi; developing new technology; enhancing tax revenue for the state; and supplementing conventional business financing." Miss.Code Ann. § 57–77–3. In accordance with the Act and the legislative directive therein, the Mississippi Department of Economic and Community Development, an agency of the State of Mississippi created by Miss.Code Ann. § 57–1–52, caused the incorporation of Magnolia Capital Corporation (Magnolia Capital), a non-profit corporation, and further formed a for-profit corporation known as Magnolia Venture Capital Corporation (Magnolia), of which Magnolia Capital was the sole shareholder. As contemplated by the Act, Magnolia in turn created and served as the general partner in Magnolia Venture Capital Fund Limited Partnership (the Partnership), whose purpose was "to provide venture capital to Mississippi businesses, to provide financing to high-growth oriented businesses, and to undertake any acts appropriate or necessary to carry out" these purposes.

In addition to providing for the creation of these various entities, the legislature provided for funding of these corporations by the sale of $20,000,000 in general obligation

bonds by the State Bond Commission, with the proceeds going to the Department, and the Department then entering into a Loan Agreement with Magnolia Capital, evidencing a $20,000,000 non-recourse loan to Magnolia Capital. Of that amount, Magnolia Capital deposited approximately $6,700,000 with the State Treasurer for investment in zero coupon bonds that were pledged to secure the loan, all pursuant to the Act. In further keeping with the Act, Magnolia Capital then invested the balance of the $20,000,000, or about $13,600,000, in Magnolia, as an equity contribution and became Magnolia's sole shareholder. Magnolia, in turn, invested approximately $8,000,000 of that sum in the Partnership, in addition to procuring a private investment totaling approximately $5,000,000. The Partnership began accepting applications for loans in January 1996.

In April 1997, Lisa Looser, apparently on behalf of Magnolia, executed a Pledge Agreement purporting to grant the Department a first priority security in certain assets to secure the obligations, indebtedness and liabilities under the Loan Agreement between Magnolia Capital and the Department. Later that month, the Department notified Magnolia that it was in default under the Loan Agreement and Pledge Agreement and requested that Magnolia deliver the pledged assets to the Department, including approximately $11,000,000 that had been invested by Magnolia and the Partnership with Prudential. According to the Department, when Magnolia refused to deliver the assets, it placed Prudential on notice of its claim to the funds and demanded that Prudential provide the funds to the Department. As a consequence of the Department's notice, Prudential did not turn over the funds to the Department, but it did place a "freeze" on the assets in its possession. Magnolia submits that as, a result of these circumstances, its only option was to file for protection as a Chapter 11 debtor under the Bankruptcy Code, which it did in May 1997.

After instituting its Chapter 11 proceeding, Magnolia filed an adversary proceeding against the Department, seeking an adjudication that the Department had no lien against or interest in the funds held by Prudential. When the Department thereafter moved to dismiss the adversary proceeding complaint as being barred by the Eleventh Amendment, Magnolia voluntarily dismissed its complaint against the Department, but it contemporaneously filed a new adversary proceeding against Prudential alleging that "[t]he Department does not hold a perfected lien or security interest in the Debtor's Assets or the Partnership's Assets in the possession of Prudential," and requesting a declaratory judgment adjudicating that the assets in Prudential's possession constituted Partnership property, "free and clear of any claim or lien by any third party."

The Department sought leave to intervene in Magnolia's adversary proceeding against Prudential for the disclosed purpose of asserting the Eleventh Amendment jurisdictional bar to any adjudication by the bankruptcy court respecting the funds in which the Department claimed an interest. The bankruptcy court did permit the Department to intervene, though it declined to allow intervention solely for the purpose of permitting the Department to assert its immunity and instead gave the Department the choice of intervening for all purposes or not at all.[1] When the Department did intervene, Prudential filed a counterclaim in the nature of interpleader against Magnolia and named the

---

**1.** At a hearing before the bankruptcy court, the court stated:

And the court will permit the Department to intervene, but not on the terms which they sought. Under the Federal Rules of Civil Procedure 24(a)(2) provides that upon timely application anyone should be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action, and so forth.

And obviously they can claim an interest because they have asserted a pledge on the assets and placed a freeze on it, and that's the whole subject matter. So they will be permitted to intervene under that Rule. However, the language that was contained in the order where they wanted to do it for limited purposes is not appropriate, and they will be allowed to intervene. And if they want to, fine. If they don't want to, that's their business. But it won't be any qualified intervention. It will be a straight intervention.

Department as a third-party defendant to that claim. And thereafter, Magnolia filed its own cross-claim against the Department, seeking, as it had in the first dismissed adversary proceeding, an adjudication that the Department has no valid security interest in the assets held by Prudential.

Following its intervention, the Department moved to withdraw the reference of the adversary proceeding to the bankruptcy court and more or less contemporaneously to dismiss the adversary proceeding based on its claimed Eleventh Amendment immunity. The Department's motion focused primarily on establishing the unconstitutionality of § 106 of the Bankruptcy Code, 11 U.S.C. § 106, by which Congress purported to abrogate the sovereign immunity of and thereby confer jurisdiction over states and state agencies which filed claims in bankruptcy proceedings.[2] Citing the reasoning of the United States Supreme Court in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Department argued that the bankruptcy court's reliance on the purported Congressional waiver of Eleventh Amendment immunity in § 106 as a means of establishing and exerting jurisdiction over the Department was not well founded inasmuch as § 106 violated the Eleventh Amendment and, being unconstitutional, was thus ineffectual as a waiver of Eleventh Amendment immunity. Though the Fifth Circuit has now confirmed the Department's position as the law of this circuit, *see Department of Transportation and Dev., State of La. v. PNL Asset Mgmt. Co. (In re Fernandez),* 123 F.3d 241, 246 (5th Cir.1997) (§ 106 is unconstitutional as "Congress cannot locate the authority claimed here to abrogate sovereign immunity in either the Bankruptcy Clause or in Section 5 of the Fourteenth Amendment"), that does not resolve the Department's motion, for there remain for consideration a number of issues, including whether the Department has, by its own affirmative actions, waived its Eleventh Amendment sovereign immunity as to

any adjudication of its claimed interest in the subject property, and if so, whether it possessed the authority to effect such a waiver.

■ Before reaching those specific issues, the court notes that it does recognize Magnolia's contention that the issue of whether the Department has, in fact, purported to waive its Eleventh Amendment immunity is irrelevant since in any event, i.e., irrespective of whether the Department has waived its immunity, the Department lacks standing to assert any claim to the subject property because it is not a creditor of Magnolia and because it holds no interest in the property at issue. In its earlier opinion addressing the Department's motion for withdrawal of reference, the court noted Magnolia's argument that the Department lacks standing

> to assert any claim to the subject property since [it] has no valid and enforceable interest in the property. In other words, ... because [the Department's] claim has no merit, then [the Department] lacks standing and the bankruptcy court may dismiss [the Department's] claim based on that lack of standing, without having to consider and/or decide any jurisdictional issue relating to the Eleventh Amendment.

This court rejected Magnolia's contention, finding it unreasonable to suggest that resolution of the jurisdictional issue—by which the court meant the issue relating to the Department's claim of Eleventh Amendment immunity—could simply be avoided by a ruling on the merits of the adversary proceeding. While that certainly is true, it is perhaps more accurate to say that because the parties herein have raised two preliminary jurisdictional issues—standing and Eleventh Amendment immunity—and one of those two issues, namely standing, is intertwined with the merits of the case, then the more reasonable approach is to first consider whether the Department, regardless of its standing or lack thereof, enjoys Eleventh Amendment sovereign immunity which prevents this or any federal court from adjudicating the par-

**2.** The statute, as amended, reads as follows:
(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, ... 362, ... 547, 548 ... of this title.

ties' dispute. In other words, as neither this court nor the bankruptcy court would need to resolve Magnolia's standing challenge if this court were to find merit in the Department's immunity claim,[3] then this court should and will address the Eleventh Amendment issue first.

■ The Department submits that as a state agency established pursuant to § 57–1–52 and related sections of Mississippi Code, it has sovereign immunity from suit which it has not waived and that therefore, the claims against it must be dismissed. Magnolia asserts several reasons why it contends that this is not the case. First, it asserts that the Department is not in a position to assert the protection of the Eleventh Amendment because the State itself is not the real party in interest in the suit. *See Richardson v. Southern Univ.*, 118 F.3d 450, 452 (5th Cir. 1997) (citing *Edelman v. Jordan*, 415 U.S. 651, 653, 94 S.Ct. 1347, 1350, 39 L.Ed.2d 662 (1974)) (though state not named as party defendant, suit "may nonetheless succumb to Eleventh Amendment immunity if the State is the real party in interest").[4] Magnolia does not deny that the Department is an agency of the State of Mississippi which, in a given case, might properly claim the State's sovereign immunity. It contends, though, that the State is not the real party in interest in the adversary proceeding because the suit seeks neither to recover damages that would be payable from the state treasury nor to compel or forbid any action by the state. *Hughes v. Savell*, 902 F.2d 376 (5th Cir.1990)

(citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)) ("The state is the real party in interest if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the state to act or to refrain from acting."). That is to say, Magnolia argues that since it is not seeking to recover any damages from the State, then the State is not a real party in interest to the adversary proceeding. However, application of the Eleventh Amendment is not limited to those cases in which a money judgment is sought against a state. And in fact, the Supreme Court has specifically found that it applies in the context of interpleader actions in which a state asserts a claim to the stake. *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) (interpleader action brought against states of Texas and California was a suit against those states which was barred by the Eleventh Amendment); *see also In re Sand Bar I, Inc.*, No. 91–1983, 1992 WL 84277 (E.D.La.1992) ("The Eleventh Amendment bars interpleader actions in which a State or States are named defendants."); *cf. Fitzgerald v. Unidentified Wrecked and Abandoned Vessel*, 866 F.2d 16 (1st Cir.1989) (Eleventh Amendment bars suit to determine ownership of sunken vessel when a state claims ownership).

■ In a related vein, Magnolia, pointing out that it instituted an adversary proceeding

**3.** The converse is obviously true, as well, in that if the court were to consider the standing issue and conclude that the Department lacked standing, then there would be no need to address the immunity argument. But the point which the court makes is that since consideration of the standing issue involves consideration of the merits of the case and consideration of the immunity issue does not, then clearly the better and more reasonable course is to treat the immunity issue first. That this is so is suggested by the following comments by the Fifth Circuit in *Barrett Computer Services, Inc. v. PDA, Inc.*, 884 F.2d 214, 218 (5th Cir.1989), in which the court explained:

Challenges to standing are disposed of in a number of ways, and it is difficult to extract a rule from the cases that clearly identifies the proper method for resolving a particular standing problem. Some are disposed of on the pleadings. Alternatively, in cases in which the

merits of the claims asserted are intertwined with the jurisdictional issue of standing, challenges to standing are frequently resolved in summary judgment proceedings—where the nonmovant is granted all reasonable factual inferences and the movant cannot succeed unless the court finds ·that no genuine issue of material fact exists—or at a trial on the merits. In such cases, to compel a preliminary factual inquiry into the plaintiff's standing would force the party bringing the suit to prove merit issues in order to establish jurisdiction.

**4.** The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

against *Prudential,* not against the *Department,* argues that the Department cannot properly and effectively invoke *its* Eleventh Amendment immunity on behalf of *Prudential,* the party against which the adversary proceeding was brought in the first place, and that regardless of the Department's entitlement to Eleventh Amendment immunity as to Prudential's interpleader complaint and Magnolia's cross-claim, Magnolia's right to proceed on its claim against Prudential cannot be thwarted by the Department's claimed immunity. The court cannot agree.

The adversary proceeding brought by Magnolia seeks turn-over of funds held by Prudential—which the Department contends constitute public funds—and an adjudication that the funds are free and clear of any claim or lien of any "third party," i.e., the Department. In other words, Magnolia's sole purpose in initiating the adversary proceeding was to prevent the Department from recovering the funds.[5] The fact of the matter is, the only "third party" claiming an interest or right to the funds is the Department, and the singular goal of the adversary proceeding—including the main claim by Magnolia against Prudential, the interpleader counterclaim and complaint by Prudential and the cross-claim by Magnolia—is an adjudication of the issue whether the Department has a valid claim of right to the subject funds. Under these circumstances, the claims are all directed against the Department and are subject to its claim of immunity.

The next question raised by Magnolia, though, is whether the Department, assuming it could have immunity, has waived that immunity. Magnolia maintains that the Department has waived any Eleventh Amendment sovereign immunity it might otherwise have been able to claim, by voluntarily appearing in the adversary proceeding and/or by consenting to suit in the Pledge Agreement upon which it predicates its claim to the funds. While the court finds no merit in the former contention, the court does view the terms of the Pledge Agreement as constituting a waiver of Eleventh Amendment immunity, or consent to suit in federal court for disputes relating to the Pledge Agreement.

■ With respect to Magnolia's contention that the Department's appearance constitutes a waiver, the court notes that the Supreme Court has held that a state's voluntary intervention in a federal interpleader action for the purpose of asserting a claim to the interpled funds or property will constitute a waiver of the state's Eleventh Amendment immunity. *See Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883) (by intervening as claimant in federal court, Rhode Island agreed to have federal court determine rights of state and other claimants to the fund). Here, however, the court cannot reasonably conclude that the Department voluntarily intervened in the adversary proceeding in order to assert a claim to the property. It is true that the Department voluntarily moved to intervene. However, the parties agree, and it is clear from the record that the Department sought to intervene as a means of apprising the bankruptcy court of its claimed interest in the property *and* to further apprise the court that in view of its Eleventh Amendment immunity, the bankruptcy court was precluded from adjudicating the parties' competing claims to the property. By contemporaneously objecting to federal jurisdiction at the time it moved to intervene, the Department did not agree to have the federal court determine the parties' respective rights to the property.

This court recognizes, of course, that in its order allowing the Department to intervene, the bankruptcy court refused to permit a qualified intervention and ruled instead that the Department could intervene for all purposes or not at all—which is to say, the bankruptcy court placed the Department in the untenable position of either forfeiting its Eleventh Amendment immunity or forfeiting its claim to the property. Under these circumstances, it can hardly be concluded that the Department's actions in response to the court's order were *voluntary* so as to constitute a waiver, particularly in light of the

---

5. And in the court's view, it appears quite likely that the sole reason for Magnolia's attempt to achieve this result indirectly by proceeding against Prudential rather than by seeking to directly litigate the issue of Magnolia's and the Department's respective rights to the monies, was that it hoped to circumvent the Department's immunity.

further fact that the first step taken by the Department upon its intervention was its filing of a motion to dismiss on Eleventh Amendment grounds. Therein, the Department argued that "because of the Eleventh Amendment sovereign immunity of [the Department] as an agency of the State of Mississippi," the bankruptcy court "[did] not have jurisdiction to return the assets held by Prudential to Debtor free and clear of any claim of lien of any third party." Two weeks later, the Department filed its motion for withdrawal of reference and to dismiss based on the Department's Eleventh Amendment immunity. *See In re Sand Bar, Inc.*, 1992 WL 84277, at *1 n. 1 (argument that state consented to suit by appearing in action was without merit where "Mississippi had to either file a claim in [the] action or risk forfeiting its right to recover anything from Petitioners."). Magnolia's position on this point is rejected.

▪ Again, though, Magnolia argues that even if the court concludes that the Department did not waive its immunity by voluntarily appearing in the case, the court still must conclude that the Department waived its immunity by virtue of a provision in the Pledge Agreement which states:

> [C]ourts within the State of Mississippi shall have jurisdiction over any and all disputes between the parties to this Pledge, whether in law or in equity, including but not limited to, all disputes arising out of or relating to this Pledge. Venue in any such dispute, whether in federal or state court, shall be laid in Hinds County, Mississippi.

It is manifest that what has arisen and is the subject of the litigation in this adversary proceeding is a "dispute between the parties to [the Pledge ... arising out of or related to [the] Pledge." Further, the import of the quoted provision is unmistakable: the Department purported by this language to waive its sovereign immunity for suits arising out of or related to the Pledge Agreement.

Moreover, in the court's opinion, and contrary to the position urged by the Department, by virtue of the Department's inclusion of the venue provision, the Department purported to waive, in sufficiently explicit terms, not only its sovereign immunity from suits in state court, but also its Eleventh Amendment immunity.[6]

In an analogous case, the Supreme Court considered whether the State of New York had waived the Eleventh Amendment immunity of the New York Port Authority in *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990). There, the Court recognized first that a general consent to suit provision, standing alone, would not be sufficient to waive Eleventh Amendment immunity since a waiver of Eleventh Amendment immunity must be express and unambiguous and since a general consent to suit provision could readily be construed as a waiver only of immunity for suits in state court. However, the Court held that where a venue provision which expressly provided for venue in "a county or judicial district established ... by the United States" was included within the same statute as the provision for consent to suit, the venue provision constituted "textual evidence of consent to suit in federal court" and resolved any ambiguity that might otherwise have existed. In other words, "the statutory venue provision suffice[d] to resolve any ambiguity contained in the States' general consent to suit provision by expressly indicating that the States' consent to suit extends to suit in federal court." *Id.* at 306, 110 S.Ct. at 1873. Likewise, in the case at bar, by the language set forth in the Pledge Agreement, the Department unequivocally purported to consent to resolution of "any and all disputes between the parties ... arising out of or relating to th[e] Pledge" by "courts within the State of Mississippi." In the absence of the additional venue provision, the extent of this waiver might be considered

---

**6.** A "State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). It is thus understood that a State does not waive its

immunity from suit in federal court merely by its waiver of sovereign immunity in its own courts. *Id.* at 99 n. 9, 104 S.Ct. at 907 n. 9. *See also Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990).

ambiguous and thus not construed to constitute a waiver of Eleventh Amendment immunity. But the additional provision laying venue "in federal or state court . . . in Hinds County, Mississippi" clarifies the Department's intent and removes any ambiguity.

■ Still that does not end the court's inquiry regarding the immunity issue inasmuch as the Department asserts that even if the language of the Pledge Agreement could properly be construed as a waiver of its Eleventh Amendment immunity, the waiver provision is ineffectual since the Department lacked authority to waive its sovereign immunity. In support of this position, the Department has directed the court to a number of cases which have recognized that "Mississippi law requires express statutory authorization before the state's sovereign immunity can be waived." *McKay v. Boyd Constr. Co., Inc.,* 769 F.2d 1084, 1087 (5th Cir.1985) (citing *Karpovs v. Mississippi,* 663 F.2d 640, 645 (5th Cir.1981), and *Jagnandan v. Mississippi State Univ.,* 373 So.2d 252, 254 (Miss.1979)). The Department argues that since nothing in the state statutes governing the Department or in the Mississippi Venture Capital Act purports to waive the Department's Eleventh Amendment sovereign immunity, then it must be concluded that the Department's waiver is intact, regardless of its attempted waiver in the Pledge Agreement.

In response to the Department's argument on this point, Magnolia has directed the court to several cases which have held that "sovereign immunity does not bar action against the State or its political subdivisions brought on a breach of contract theory." *Trammell v. State of Miss.,* 622 So.2d 1257, 1262 (Miss. 1993); *Churchill v. Pearl River Basin Dev. Dist.,* 619 So.2d 900, 903 (Miss.1993) ("Sovereign immunity does not bar actions against the state or its political subdivisions brought on a breach of contract theory."). This principle is based on the notion that,

[w]here the state has lawfully entered into a business contract with an individual, the obligations and duties of the contract should be mutually binding and reciprocal. There is no mutuality or fairness where a state or county can enter into an advantageous contract and accept its benefits but refuse to perform its obligations.

In the case at bar, the Department does not contend that it lacked legislative authorization to enter the Pledge Agreement and in the court's opinion, it had such authority. Consequently, the Department not only had the concomitant authority to waive its immunity for any claims brought against it for breach of the terms of that agreement, but the act of executing the agreement constituted a waiver of immunity for claims against the Department for any breach of the agreement as a matter of law. And while the claims asserted against the Department in this case are not strictly for breach of the contract per se, the rationale upon which the judicial recognition of waiver by contract is equally applicable. That is, there would be "no mutuality or fairness" in allowing the Department to assert the Pledge Agreement in support of its claim to the funds in question and yet at the same time permit it to avoid challenges to the validity of the agreement or the correctness of the Department's claim to an interest predicated on that agreement. For these reasons, therefore, the court concludes that the Department has clearly, unequivocally and effectively waived its Eleventh Amendment immunity, and for that reason, the Department's motion to dismiss will be denied.

■ As the court indicated *supra,* it granted the Department's motion for withdrawal of reference solely for the purpose of resolving the jurisdictional issue related to the Eleventh Amendment. The separate jurisdictional issue arising from Magnolia's challenge to the Department's standing may properly be decided by the bankruptcy court.[7]

---

7. The court would, however, make the following observations on the issue. First, to the extent that Magnolia relies on 11 U.S.C. § 1109 as the basis for its claim that the Department is not a party in interest and thus lacks standing, its reliance is not well placed, for

Section 1109(b) of the Code does not appear to have any bearing on whether one qualifies as a party in interest who may bring an adversary action. The language of Section 1109(b) states that it applies to a case under title 11— i.e., to the underlying bankruptcy case. The

Based on the foregoing, it is ordered that the Department's motion to dismiss on Eleventh Amendment grounds is denied, and this case is again referred to the bankruptcy court for final disposition.

applicable provision for ascertaining whether one is a party in interest in an adversary proceeding is Fed.R.Civ.P. 17(a). *T.A. Title Ins. Co. v. Lampl, Sable & Makoroff (In re Marcus Hook Development Park, Inc.),* 153 B.R. 693, 700 (Bankr.W.D.Pa.1993). *See also* Rules of Practice and Procedure in Bankruptcy Rule 7017 ("Rule 17 F.R.Civ.P. applies in adversary proceedings...."). And to the extent that Magnolia's challenge to the Department's standing is based on its claim that Magnolia has no valid interest in the assets held by Prudential, its challenge appears to go directly to the merits of the Department's claim and is not properly resolved as a preliminary matter unless Magnolia demonstrates that there is no issue of fact as to the Department's interest. *See Barrett Computer Services, Inc. v. PDA, Inc.,* 884 F.2d 214, 219 (5th Cir.1989) (where considerations of standing cannot be severed from resolution of the merits, a preliminary hearing of the type available in disposing of a motion to dismiss "would not offer an appropriate forum for evaluating the issues").